Dale RANKIN et al, Appellants,

v.

FPL ENERGY, LLC et al, Appellees.

No. 11–07–00074–CV.

Court of Appeals of Texas,
Eastland.

Aug. 21, 2008.

Steven E. Thompson, Steven E. Thompson & Associates, Houston, Kevin J. Keith, Hiersche, Hayward, Drakelye & Urbach, Addison, for Appellants.

Jeremy A. Fielding, Michael P. Lynn, John T. Cox III, Lynn Tillotson & Pinker, LLP., Dallas, for Appellees.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

Several individuals and one corporation[1] (Plaintiffs) filed suit against FPL Energy, LLC; FPL Energy Horse Hollow Wind, LP; FPL Energy Horse Hollow Wind, LP, LLC; FPL Energy Horse Hollow Wind GP, LLC; FPL Energy Callahan Wind Group, LLC; and FPL Energy Callahan, LP (FPL).[2] Plaintiffs sought injunctive relief and asserted public and private nuisance claims relating to the construction and operation of the Horse Hollow Wind Farm in southwest Taylor County. FPL filed a motion for partial summary judgment directed at Plaintiffs' nuisance claims, and the trial court granted it in part dismissing Plaintiffs' claims to the extent they were based on the wind farm's visual impact. Plaintiffs' remaining private nuisance claim proceeded to trial. The jury found against Plaintiffs, and the trial court entered a take-nothing judgment.

### I. *Issues on Appeal*

Plaintiffs attack the trial court's judgment with three issues. They contend that the trial court erred by granting FPL's motion for partial summary judgment, that the trial court erred by excluding their fact rebuttal witnesses, and that the trial court erred by excluding expert rebuttal testimony. FPL asserts one cross-issue, contending that the trial court erred when it did not assess all taxable costs against Plaintiffs.

### II. *Analysis*

#### A. *FPL's Motion for Partial Summary Judgment.*

FPL asked the trial court to dismiss Plaintiffs' public and private nuisance claims contending that Plaintiffs could not assert a nuisance claim based upon the wind farm's aesthetical impact and that Plaintiffs' deposition testimony precluded their remaining nuisance claims. The trial court granted the motion in part and dismissed "Plaintiffs' claims of public and private nuisance asserted in whole or in part on the basis of any alleged aesthetic impact of [FPL's] activities." The trial court later included an instruction in the jury charge that excluded their consideration of the wind farm's aesthetic impact.[3]

#### 1. *Standard of Review.*

Plaintiffs characterize FPL's motion for summary judgment as a motion on the

---

1. Dale Rankin, Stephanie Rankin, Kenneth G. Lain, Sherri A. Lain, Dr. Paul Thames, Gail Thames, Jim Blay, Luann Blay, Stephanye Sayles Taylor, Paula Kinter, Patricia Harvey, Patricia Lapoint, Greg McEachern, Walter McGee, Debra McGee, Steve Brasher, Linda Brasher, and Convest Corporation.

2. Plaintiffs also sued the owners of the property upon which the wind farm was constructed but dismissed them immediately prior to the start of trial.

3. The trial court instructed the jury:
 In determining whether the Defendant(s) have substantially interfered with the Plaintiffs' use and enjoyment of their property, you may not consider whether the Plaintiffs are offended, disturbed, or annoyed because of the way the wind turbine project

has affected their landscape, scenery, or the beauty of the area. Under the laws of the State of Texas, a condition that causes aesthetic changes to the view, scenery, landscape, or beauty of an area is not a nuisance. The Plaintiffs' feelings and beliefs about the turbines' impact on the aesthetic character of the area, including any impact on the beauty, scenery, landscape, view, or appearance of the area may not be considered a substantial interference with the use and enjoyment of the Plaintiffs' property. Therefore, any emotional or physical damage to Plaintiffs or any diminished market value caused by aesthetic or sight-based objections to the condition, if they exist, cannot be a basis for economic or non-economic damage.

pleadings. FPL, however, attached twenty-one exhibits to its motion and utilized this evidence to define the issues. We will, therefore, treat it as a traditional motion for summary judgment and will apply the well-recognized standard of review. Questions of law are reviewed de novo. *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex.App.–Austin 1999, pet. denied). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex.2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

### 2. Texas Nuisance Law.

■■■■ Texas law defines "nuisance" as "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex.2004). Nuisance claims are frequently described as a "nontrespassory invasion of another's interest in the use and enjoyment of land." *See, e.g., GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 615 (Tex.App.–Houston [14th Dist.] 2001, pet. denied).[4] But despite this exclusionary description,

in some instances an action can be both a trespass and a nuisance. *See, e.g., Allen v. Virginia Hill Water Supply Corp.*, 609 S.W.2d 633, 636 (Tex.Civ.App.–Tyler 1980, no writ) (continuing encroachment upon the land of an adjoining owner by either erecting or maintaining a building without any right to do so is a trespass and a private nuisance).

In practice, successful nuisance actions typically involve an invasion of a plaintiff's property by light, sound, odor, or foreign substance. For example, in *Pascouet,* floodlights that illuminated the plaintiffs' backyard all night and noisy air conditioners that interfered with normal conversation in the backyard, that could be heard indoors, and that interrupted plaintiffs' sleep constituted a nuisance. 61 S.W.3d at 616. In *Bates,* the court noted that foul odors, dust, noise, and bright lights could create a nuisance. 147 S.W.3d at 269. In *Lamesa Coop. Gin v. Peltier*, 342 S.W.2d 613 (Tex.Civ.App.–Eastland 1961, writ ref'd n.r.e.), a cotton gin's operations were a nuisance because of its loud noises and bright lights that could be seen and heard on plaintiff's property and because of the dust, lint, and cotton burrs that would be carried there.

Texas courts have not found a nuisance merely because of aesthetical-based complaints. In *Shamburger v. Scheurrer*, 198 S.W. 1069 (Tex.Civ.App.–Fort Worth 1917, no writ), the defendant began construction of a lumberyard in a residential neighborhood. Neighboring homeowners filed suit and contended that the lumberyard would be unsightly, unseemly, and have ugly buildings and structures. The court held

---

4. Trespass to real property occurs when a person enters another's land without consent. *Wilen v. Falkenstein*, 191 S.W.3d 791, 797 (Tex.App.–Fort Worth 2006, pet. denied). To recover damages, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property; (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary; and (3) the defendant's trespass caused injury to the plaintiff. *Id.* at 798.

that this did not constitute a nuisance, writing:

> The injury or annoyance which warrants relief against an alleged nuisance must be of a real and substantial character, and such as impairs the ordinary enjoyment, physically, of the property within its sphere; for if the injury or inconvenience be merely theoretical, or if it be slight or trivial, or fanciful, or one of mere delicacy or fastidiousness, there is no nuisance in a legal sense. Thus the law will not declare a thing a nuisance because it is unsightly or disfigured, because it is not in a proper or suitable condition, or because it is unpleasant to the eye and a violation of the rules of propriety and good taste, for the law does not cater to men's tastes or consult their convenience merely, but only guards and upholds their material rights, and shields them from unwarrantable invasion.

*Id.* at 1071–72. In *Dallas Land & Loan Co. v. Garrett,* 276 S.W. 471, 474 (Tex.Civ. App.–Dallas 1925, no writ), the court found that a garage being built for residents of an apartment complex was not a nuisance because "[m]atters that annoy by being disagreeable, unsightly, and undesirable are not nuisances simply because they may to some extent affect the value of property." In *Jones v. Highland Mem'l Park,* 242 S.W.2d 250, 253 (Tex.Civ.App.–San Antonio 1951, no writ), the court held that the construction of a cemetery on adjacent property did not constitute a nuisance, noting: "However cheerless or disagreeable the view of the cemetery in question may be to appellees, and no matter what unpleasant or melancholy thoughts the same may awaken, no reason is thereby shown why appellants should be restrained from making such use of their property."

### 3. Plaintiffs' Nuisance Claim.

■ Plaintiffs advance several arguments why this caselaw does not preclude their private nuisance action. First, they argue that aesthetics may be considered as one of the *conditions* that creates a nuisance. Plaintiffs concede that, if their only complaint is subjectively not liking the wind turbines' appearance, no nuisance action exists. But, they contend that the jury was entitled to consider the wind farm's visual impact in connection with other testimony such as: the turbines' blinking lights, the shadow flicker affect they create early in the morning and late at night, and their operational noises to determine if it was a nuisance. Second, they note that nuisance law is dynamic and fact-specific; therefore, they contend that older case holdings should not be blindly followed without considering intervening societal changes. Third, nuisance claims should be viewed through the prism of a person of ordinary sensibilities and caselaw involving unreasonable plaintiffs asserting subjective complaints should be considered accordingly.

FPL responds that the trial court ruled correctly because no Texas court has ever recognized a nuisance claim based upon aesthetical complaints and notes that, in fact, numerous courts have specifically rejected the premises behind such a claim. *See, e.g, Dallas Land & Loan,* 276 S.W. at 474; *Shamburger,* 198 S.W. at 1071 ("the law will not declare a thing a nuisance because … it is unpleasant to the eye"). FPL argues that sound public policy supports such a rule because notions of beauty or unsightliness are necessarily subjective in nature and that giving someone an aesthetic veto over a neighbor's use of his land would be a recipe for legal chaos. Finally, FPL argues that the wind farm does not prevent any of the plaintiffs from using their property but at most involves

an emotional reaction to the sight of the wind turbines and contends that an emotional reaction alone is insufficient to sustain a nuisance claim.

When FPL moved for summary judgment, Plaintiffs presented affidavits from the plaintiffs to establish that the wind farm was a nuisance. Plaintiffs' affidavits personalize individual objections to the wind farm's presence and to the use of wind turbines for generating electricity commercially. They also express a consistent theme: the presence of numerous 400–foot–tall wind turbines has permanently and significantly diminished the area's scenic beauty and, with it, the enjoyment of their property. Some Plaintiffs, such as Linda L. Brasher, took issue with the characterization of her complaint as just aesthetics. She acknowledged not liking the turbines' looks but contended that they had a larger impact than mere appearance. Brasher stated that she and her husband had purchased their land to build a home and to have a place "for strength, for rest, for hope, for joy, for security—for release." They had plans for building and operating a small bed and breakfast but cancelled those plans in response to the wind farm. Brasher characterized the presence of the wind farm as "the death of hope."

 Plaintiffs' summary judgment evidence makes clear that, if the wind farm is a nuisance, it is because Plaintiffs' emotional response to the loss of their view

due to the presence of numerous wind turbines substantially interferes with the use and enjoyment of their property. The question, then, is whether Plaintiffs' emotional response is sufficient to establish a cause of action. One Texas court has held that an emotional response to a defendant's lawful activity is insufficient. *Maranatha Temple, Inc. v. Enterprise Products Co.*, 893 S.W.2d 92 (Tex.App.–Houston [1st Dist.] 1994, writ den'd), involved a suit brought by a church against the owners and operators of companies involved in an underground hydrocarbon storage facility. The church's claims included a nuisance action. The trial court granted summary judgment against the church. *Id.* at 96. The question before the Houston First Court was whether a nuisance action could exist when the only claimed injury was an emotional reaction to the defendants' operations. The court found that a nuisance could occur in one of three ways: (1) by the encroachment of a physically damaging substance;[5] (2) by the encroachment of a sensory damaging substance;[6] and (3) by the emotional harm to a person from the deprivation of the enjoyment of his or her property, such as by fear, apprehension, offense, or loss of peace of mind. *Id.* at 99. The court noted that nuisance claims are subdivided into nuisance per se and nuisance in fact.[7] *Id.* at 100. Because the operation of the storage facility—just like FPL's wind farm—was lawful, it could not constitute a nuisance per se.[8] This last

---

**5.** *See, e.g., Bible Baptist Church v. City of Cleburne*, 848 S.W.2d 826, 829 (Tex.App.–Waco 1993, writ denied) (raw sewage backed up onto plaintiff's property).

**6.** *See, e.g., Bay Petroleum Corp. v. Crumpler*, 372 S.W.2d 318 (Tex.1963) (plaintiffs claimed that noxious gases from a salt dome harmed them).

**7.** A nuisance per se is an act, occupation, or structure that is a nuisance at all times, under

any circumstances, and in any location. A nuisance in fact is an act, occupation, or structure that becomes a nuisance by reason of its circumstances or surroundings. *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 216 (Tex.App.–Houston [14th Dist.] 1989, writ denied).

**8.** *See Warren v. Premier Oil Ref. Co.*, 173 S.W.2d 287 (Tex.Civ.App.–Eastland 1943, writ ref'd w.o.m.).

factor was critical. The court recognized that no case or other authority specifically gives a nuisance-in-fact cause of action based on fear, apprehension, or other emotional reaction resulting from the lawful operation of industry and affirmed the summary judgment. 893 S.W.2d at 100 & n. 6.[9]

Plaintiffs do not contend that FPL's operations are unlawful but minimize this factor by arguing that even a lawful business can be considered a nuisance if it is abnormal and out of place in its surroundings. Plaintiffs are correct that several Texas courts have recited this general principle; but, in each of the cases cited by Plaintiffs, the nuisance resulted from an invasion of the plaintiff's property by flooding,[10] flies,[11] or odors.[12] We cannot, therefore, agree with Plaintiffs that merely characterizing the wind farm as abnormal and out of place in its surroundings allows a nuisance claim based on an emotional reaction to the sight of FPL's wind turbines.

We do not minimize the impact of FPL's wind farm by characterizing it as an emotional reaction. Unobstructed sunsets, panoramic landscapes, and starlit skies have inspired countless artists and authors and have brought great pleasure to those fortunate enough to live in scenic rural settings. The loss of this view has undoubtedly impacted Plaintiffs. A landown-er's view, however, is largely defined by what his neighbors are utilizing their property for. Texas caselaw recognizes few restrictions on the lawful use of property. If Plaintiffs have the right to bring a nuisance action because a neighbor's lawful activity substantially interferes with their view, they have, in effect, the right to zone the surrounding property. Conversely, we realize that Plaintiffs produced evidence that the wind farm will harm neighboring property values and that it has restricted the uses they can make of their property. FPL's development, therefore, could be characterized as a condemnation without the obligation to pay damages.

Texas caselaw has balanced these conflicting interests by limiting a nuisance action when the challenged activity is lawful to instances in which the activity results in some invasion of the plaintiff's property and by not allowing recovery for emotional reaction alone. Altering this balance by recognizing a new cause of action for aesthetical impact causing an emotional injury is beyond the purview of an intermediate appellate court. Alternatively, allowing Plaintiffs to include aesthetics as a condition in connection with other forms of interference is a distinction without a difference. Aesthetical impact either is or is not a substantial interference with the use and enjoyment of land.[13]

---

**9.** In *Pascouet*, the defendant argued that *Maranatha Temple* required physical damage to persons or property to establish a nuisance in fact claim. The Fourteenth Court characterized the language giving rise to this argument as dicta and found that an offensive odor could constitute a nuisance even though no physical damage resulted. 61 S.W.3d at 615. We agree with the Fourteenth Court. The presence of bright lights, loud noises, smoke, soot, foul-smelling gas, etc., if sufficiently extreme, can create a nuisance even in the absence of any property damage or personal injury.

**10.** *See City of Tyler v. Likes,* 962 S.W.2d 489 (Tex.1997).

**11.** *See Storey v. Cent. Hide & Rendering Co.,* 148 Tex. 509, 226 S.W.2d 615, 618 (1950).

**12.** *See Soap Corp. of Am. v. Balis,* 223 S.W.2d 957 (Tex.Civ.App.–Fort Worth 1949, writ ref'd n.r.e.).

**13.** We do not hold that aesthetical-based evidence is inadmissible. The trial court has wide discretion concerning the admission of evidence; and, in individual cases, aesthetical information may be relevant for a variety of purposes.

If a jury can consider aesthetics as a condition, then it can find nuisance because of aesthetics. Because Texas law does not provide a nuisance action for aesthetical impact, the trial court did not err by granting FPL's motion for partial summary judgment and by instructing the jury to exclude from its consideration the aesthetical impact of the wind farm. Issue One is overruled.

### B. Plaintiffs' Rebuttal Witnesses.

FPL called three witnesses who were not plaintiffs, but who had been in the vicinity of the wind farm, to describe the noises they heard coming from the turbines. Plaintiffs attempted to call three other nonparty neighboring landowners as rebuttal witnesses in response to this testimony. FPL objected that the witnesses had not been disclosed. The trial court sustained FPL's objection and excluded their testimony. Plaintiffs also attempted to recall their sound expert Paul Kiteck to rebut testimony by FPL's sound expert Robert Damon O'Neal concerning an EPA publication on sound levels. FPL objected that this was an undisclosed opinion. The trial court sustained FPL's objection and excluded Kiteck's testimony.

### 1. Standard of Review.

We review a trial court's decision to exclude evidence for an abuse of discretion. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001). To obtain reversal of a judgment based on error in the exclusion of evidence, Plaintiffs must show (1) the trial court did in fact commit error and (2) the error probably resulted in an improper judgment. *Id.* This usually requires a demonstration that the judgment turns on the excluded evidence. *Knox v. Taylor*, 992 S.W.2d 40, 63 (Tex.App.–Houston [14th Dist.] 1999, no pet.). If the evidence is merely cumulative and does not concern a material issue dispositive of the case, then its exclusion is harmless error. *Id.*

In determining whether the trial court abused its discretion, we review the entire record. *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex.App.–Houston [14th Dist.] 2006, pet. denied). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for doing so, even if that ground was not raised below. *See State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n. 5 (Tex.1989). Thus, we will examine all bases for upholding the trial court's judgment that are suggested in the record or urged by FPL.

### 2. Fact Witnesses.

The parties strenuously dispute whether Plaintiffs were required to disclose the three fact witnesses before trial. We need not resolve this question because Plaintiffs have shown no harm. Each plaintiff testified and described for the jury the noises they heard from the turbines. Plaintiffs also called a nonparty landowner, Jamie Lynn Conway. He too described the noises made by FPL's wind turbines. Finally, Plaintiffs called a sound expert who testified about his sound level measurements.

Plaintiffs contend that their case was severely damaged but do not point to any evidence that the three rebuttal witnesses could have offered that was not previously presented to the jury. Because the jury had already heard a number of individuals who lived in the area describe the noises created by the turbines, the excluded testimony would have only been cumulative. The trial court did not abuse its discretion, and Issue Two is overruled.

### 3. Kiteck's Rebuttal Testimony.

The dispute over Kiteck's testimony actually arose during Plaintiffs' case-in-

chief. When Kiteck was called as a witness, FPL objected to his anticipated testimony contending that he would offer improperly undisclosed opinions. The trial court sustained FPL's objection and limited Kiteck's testimony to previously disclosed opinions. Plaintiffs made an offer of proof in response to this ruling. Kiteck testified that FPL's expert report referred to an EPA publication that was known as the "Levels Document," that he was familiar with it, and that he reviewed it when he learned that FPL was using it as a sound-level criterion. Kiteck testified that FPL contended that 55 dB was the applicable noise standard and that this noise level was originally identified by the EPA as acceptable for the general public. But, Kiteck testified that the EPA standard assumed an urban residential environment and prior experience with the intruding noise. If applied to rural residential properties, such as the Plaintiffs', the EPA required adjustments to the 55 dB standard. According to Kiteck, Appendix D to the Levels Document explained how to adjust the standard to reflect actual conditions. Kiteck then illustrated how to apply it in this case and concluded that the 55 dB standard should be adjusted by twenty points.

FPL renewed its objection at the conclusion of the offer, contending that it had no prior notice of this testimony. Plaintiffs responded that they did provide notice that Kiteck would evaluate FPL's expert opinions and that he would render an opinion based upon any conclusions expressed in their report. Plaintiffs, however, did not contend that they specifically disclosed Kiteck's opinions on the proper application of the Levels Document. The trial court sustained FPL's objection and excluded Kiteck's testimony.

FPL's sound expert, O'Neal, testified that he used the Levels Document as a guideline to determine that the appropriate noise standard was 55 dB. During cross-examination, O'Neal testified that he did not analyze Appendix D to the Levels Document because it was not relevant. He claimed that Appendix D concerned whether people were likely to complain and not whether a particular sound level would interfere with speech and other activities.

Kiteck's testimony was reconsidered after FPL rested. Plaintiffs contended that Kiteck could rebut O'Neal's testimony by explaining why and how Appendix D applied. FPL reiterated its objection that this was an undisclosed opinion and, therefore, inadmissible. Plaintiffs conceded that Kiteck received FPL's expert report before trial, that Kiteck has had a long-standing opinion on the correct application of the Levels Document, and that it required an expert to testify about the correct application of the Levels Document. The trial court expressed concern about the lack of a pretrial disclosure that Kiteck would criticize O'Neal's application of the Levels Document and sustained FPL's objection.

The trial court did not abuse its discretion. Plaintiffs learned during discovery that FPL was advocating a 55 dB noise standard and that it claimed this was an EPA recognized noise level. Therefore, Plaintiffs knew before trial that, if they disagreed with this noise level, they would have to rebut FPL's expert testimony. Accordingly, Plaintiffs were obligated to disclose Kiteck's opinion testimony on the proper application of the Levels Document, and their failure to do so is sufficient basis for exclusion. *See Moore v. Mem'l Hermann Hosp. Sys., Inc.*, 140 S.W.3d 870, 875 (Tex.App.–Houston [14th Dist.] 2004, no pet) (when a party reasonably anticipates the need to rebut the testimony of an opposing expert, the failure to dis-

close is not excused by characterizing the witness as a rebuttal witness). Issue Three is overruled.

### C. Taxing Court Costs.

■ FPL asked the court to tax all costs against Plaintiffs. Plaintiffs responded that good cause existed for taxing costs otherwise because Plaintiffs were required to respond to groundless motions and to attend unnecessary depositions. The trial court asked what the costs were, and they were estimated to be between $30,000 and $40,000. The trial court made a reference to too many depositions being taken; but, when it denied FPL's request, it stated that good cause existed for taxing the parties with their own costs because most of the plaintiffs were ordinary working people with no real money, that making them pay FPL's tremendous costs was not right, and that it would unfairly "chill" Plaintiffs' ability to prosecute an appeal. FPL argues that the trial court abused its discretion because perceived fairness and inability to pay can never constitute good cause.

Trial courts are generally required to tax costs against the unsuccessful party. TEX.R. CIV. P. 31. But, they have the discretion to tax costs otherwise for good cause stated on the record. TEX.R. CIV. P. 141. The Texas Supreme Court has recognized that conduct unnecessarily prolonging and obstructing a trial can constitute good cause. *See Rogers v. Walmart Stores, Inc.*, 686 S.W.2d 599, 601 (Tex. 1985). Conversely, the court has held that a party's emotional distress at having to pay costs, inability to pay, and a trial court's perceived fairness do not constitute good cause. *See Roberts v. Williamson*, 111 S.W.3d 113, 124 (Tex.2003) (fairness when considering how to apportion the guardian ad litem's fees could be considered good cause, but the record must establish more than the trial court's per-

ception of general fairness); *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 378 (Tex.2001) (emotional distress at having to pay costs and inability to pay are not good cause).

■ To determine if the trial court properly exercised its discretion, we have been instructed to scrutinize the record to determine if it supports the trial court's decision to tax some or all costs against the prevailing party. *Rogers*, 686 S.W.2d at 601. Unless the record demonstrates an abuse of discretion, the trial court's assessment of costs for good cause should not be disturbed on appeal. *Id.* at 601. In *Bethune*, the court held that Rule 141's good cause exception "is designed to account for a prevailing party's questionable conduct that occurs during litigation, permitting the trial judge some discretion to reassess costs so that the cost attendant to that conduct is not visited on an innocent, but losing party." 53 S.W.3d at 378.

The trial court's stated reason for taxing each party with its own costs—Plaintiffs' inability to pay—was an improper one. The record, however, indicates that this was not the only possible reason for applying Rule 141. Plaintiffs' counsel complained that FPL took too many depositions and that the depositions ran too long. He noted that FPL deposed each of the plaintiffs twice—once before the turbines were constructed and again after their construction. He also referenced increased costs for obtaining expedited deposition transcripts and complained about costs Plaintiffs incurred responding to groundless motions.

Because the trial court erred by relying on Plaintiffs' inability to pay but because the record contains other information that could support a Rule 141 good cause determination and because the record indicates that the trial court was concerned about

the amount of the costs, we are remanding this case back to the trial court solely to reconsider the allocation of taxable costs. FPL's cross-issue is sustained in part.

### III. *Holding*

We reverse the judgment of the trial court in part and remand the cause for determination of the allocation of taxable costs. We affirm the judgment of the trial court in all other respects.