

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00134-CV

_____

RAY BRAXTON, Appellant

V.

CHIN TUO CHEN, Appellee

On Appeal from the County Court at Law 2
Gregg County, Texas
Trial Court No. 2009-1321-CCL2

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Adjoining landowners Ray Braxton and Chin Tuo Chen do not see eye to eye. In part, that is because the level portion of Chen's land lies between twenty-five and thirty feet lower than Braxton's land, and Chen has removed some of the dirt from the seventy-five-to-ninety-foot slope on his own land that laterally supports Braxton's land. Braxton alleges that Chen wants to take the rest of the slope away and leave only a cliff on the boundary line. Braxton sued Chen for "loss of lateral support," trespass, "equitable claims and liens," negligence, public and private nuisance, and unjust enrichment. He also sought injunctive relief "prohibiting [Chen] from removing any additional soil from [Chen's] property."[1]

From a summary judgment in favor of Chen,[2] Braxton appeals. We affirm in part and reverse and remand in part, because (1) the trial court's judgment was final, (2) the cause of action for loss of lateral support fails as a matter of law, (3) the cause of action for negligence fails as a matter of law, (4) the cause of action for public or private nuisance fails as a matter of law, (5) no evidence raises a fact issue on any imminent harm or on any probable right to recovery on any support-related cause of action, and (6) the cause of action for trespass remains.

---

[1]The trial court had previously issued a temporary injunction dated September 10, 2009, commanding Chen to "desist and refrain from removing or moving any of the soil located on [his] property." For reasons stated in a previous opinion from this Court, the temporary injunction was reversed. *Chen v. Braxton*, No. 06-09-00088-CV, 2010 WL 99064 (Tex. App.—Texarkana Jan. 13, 2010, no pet.) (mem. op.).

[2]Chen filed no-evidence and traditional motions for summary judgment arguing "[t]here is no genuine issue of material fact that Braxton's land suffers any injury from Chen's removing dirt from Chen's premises," and because of a "lack of injury," Braxton's negligence, trespass, and nuisance causes of action "fail[ed] as a matter of law." The trial court granted Chen's motions for summary judgment and entered a take-nothing judgment in his favor.

*(1)     The Trial Court's Judgment Was Final*

Braxton appeals the trial court's judgment arguing that the "trial court erred in entering a final judgment since the defendant's motions for summary judgment did not address all of plaintiff's causes of action" and that genuine issues of material fact preclude the entry of summary judgment. The judgment complained of is entitled "Final Summary Judgment," orders that Braxton "take nothing against defendant," states that "[a]ll relief requested by any party in this case that is not expressly granted by this judgment is denied," and asserts that "[t]his judgment finally disposes of all parties and claims in this action, is a final judgment and is therefore appealable."

This Court has jurisdiction only over appeals from final decisions of trial courts and from interlocutory orders as provided by statute. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (West 2008). "[A] judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Lehmann*, 39 S.W.3d at 192–93. To determine whether an order actually disposes of all pending parties and claims, the appellate court may look to the record in the case. *Id.* at 205. Therefore, we first review the live pleadings, in the context of the parties' asserted grounds for seeking summary judgment, to determine what parties and claims were pending when the trial court signed the

3

judgment.  *See Rose v. First Am. Title Ins. Co. of Tex.*, 907 S.W.2d 639, 641 (Tex. App.—Corpus Christi 1995, no writ).

Braxton argues that, while Chen "filed his motions for summary judgment on plaintiff's causes of action for loss of lateral support, negligence, trespass, and nuisance causes of action," no motion for summary judgment was filed on Braxton's claims "for equitable claims and liens and for a permanent injunction."

This Court has been unable to locate a Texas cause of action labeled "equitable claims and liens."  The substance of Braxton's pleading is contained below:

<u>Equitable Claims and Liens</u>
6.01.  Plaintiff refers to and incorporates the above factual allegations as if set forth in their entirety herein.
6.02.  Plaintiff would show that Defendant has interfered with Plaintiff's legally protected right to lateral support for his property without justification and in conscious disregard of Plaintiff's rights.  Therefore, Defendant is liable to Plaintiff for unjust enrichment and is liable to Plaintiff for all gains (including consequential gains) and benefits derived from Defendant's wrongful conduct.
6.03.  Defendant is also liable to Plaintiff for the expense of all reasonable and necessary expenditures to maintain or protect Plaintiff's right to lateral support for this property.
6.04.  Plaintiff is entitled to an equitable lien or claim against both the property owned by the Defendant upon which lateral support has been withdrawn and the property owned by Defendant upon which the wrongfully removed soil has been deposited.
6.05.  Plaintiff sues herein asking that the Court recognize and enforce such liens by foreclosing upon Defendant's properties.
6.06.  Plaintiff also brings suit for all remedies for Defendant's inequitable conduct which may be allowed under the common law or which are recognized and set forth in the Restatement of Law, Third, Restitution and Unjust Enrichment.

4

To the extent Section 6.02 pleads a cause of action, we find that it is for loss of lateral support, a claim upon which summary judgment was sought. The remainder of Section 6.02 and Section 6.06 discuss unjust enrichment. However, unjust enrichment is not a cause of action. *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied); *LaChance v. Hollenbeck*, 695 S.W.2d 618, 620 (Tex. App.—Austin 1985, writ ref'd n.r.e.). Likewise, we find that the remainder of the pleading under "equitable claims and liens" seeks a remedy and does not assert a separate cause of action. Therefore, Braxton's theory that the judgment is interlocutory because it does not dispose of the claim of "equitable claims and liens" must fail.

Likewise, "[a] permanent injunction is not a cause of action but an equitable remedy." *Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied) (citing *Brittingham v. Ayala*, 995 S.W.2d 199, 201 (Tex. App.—San Antonio 1999, pet. denied)). "To obtain an injunction a party must first assert a cause of action." *Id.* "Thus, [Chen was] not required to specifically address [Braxton's] request for a permanent injunction in [his] summary judgment motions but only those causes of action upon which [Braxton's] request for injunctive relief was based." *Id.* at 769–70.

Because equitable claims and liens and a request for permanent injunction are not causes of action, and because, as Braxton admits, Chen's motions for summary judgment addressed the remaining causes of action in the complaint, we are satisfied that the trial court's motion for

5

summary judgment disposed of all cognizable claims addressed in Braxton's complaint. Therefore, the trial court's judgment was final.

*(2)    The Cause of Action for Loss of Lateral Support Fails as a Matter of Law*

According to Braxton's geotechnical forensic engineer, Homer R. Parker, Chen's removal of dirt from the slope created unstable conditions which "represent[ed] a significant potential for slope failure in the form of a landslide" that could occur on Braxton's property, "render[ing] it unsuitable for future development."

Chen's motions are based on a single premise:   "[t]here is no genuine issue of material fact that Braxton's land suffers any injury from Chen's removing dirt from Chen's premises."   Chen's position was based on the facts of the case and testimony from Braxton's expert, Parker.

Parker explained that, as Chen removed soil from the bottom of the slope, he created a "cut slope" that potentially affected the stability of the remainder of the slope.   The cut in the slope allowed for groundwater from the Braxton property to seep out and affect slope stability.   He testified, "As you take more and more soil out, increase the steepness of the inclination, then the factor of safety continues to drop."   Parker conducted a slope stability analysis using core samples from Braxton's property and concluded the slope was "a pretty unsafe slope."   He utilized Galena, a program that does not measure stability of slopes, but "predicts a factor of safety for the potential failure."   He admitted "we cannot predict with 100 percent certainty all of the variables that go into an analysis."

6

According to Parker, the slope factor was 1.5, and he testified that, at this factor, "some slopes will fail." However, he admitted that he could make "no prediction of the timing" of when, if ever, the slope would collapse. Parker stated the slope could fail the next day or could take many years to fail. The text of the discussion follows:

> Q. Let's look at it this way. Let's get it down here. You cannot say when, if ever, either one of those slopes will collapse, whether it's the western slope or whether it's the slope that goes east and west on the top of the property?
>
> A. No. I made no prediction of the timing.
>
> Q. Okay. And that means that that land can be out there for another 40,000 years, like your record indicated the slope is, without ever collapsing?
>
> A. It's possible, but not likely.

During cross-examination, Parker testified:

> Q. . . . . Mr. Supercinski said it's possible that that slope could be out there another 40,000 years and not fail; is that right?
>
> A. I think he said 40 years, but yeah, whatever --
>
> Q. Forty years?
>
> A. These things -- there's a lot of time dependency here that we can't accommodate.
>
> Q. Is it also possible, using that same sort of questioning, that it could fail tomorrow?
>
> A. Absolutely. Especially if we get a storm event.
>
> Q. The whole point of your evaluation is to determine the risk of failure or the -- state it another way, the minimum acceptable slope to prevent failure?

7

A.    That's correct.

Q.    And that's what you did in this case?

A.    That's what I did.

Parker also provided two expert reports. This first report explained that a "maximum slope inclination should not be steeper than 2.5H:1.0V." In other words, ideally, the slope should not exceed a vertical rise of one "foot . . . for every 2.5 feet of horizontal distance." Because Chen's removal of dirt "yielded slope inclinations ranging from 2.3:1.0 to 2.7:1.0," Parker believed the "inclination [was] steeper than what is normally considered acceptable for cut slopes in native strata." In Parker's opinion, there was danger that "the earth mass could . . . remove a rather large segment of the Braxton property . . . render[ing] it unsuitable for future development" due to the potential for "landslide." However, consistent with his testimony, Parker reiterated, "It is not possible to predict the time element for deterioration or collapse of the slope. Suffice it to state the prevailing conditions do not appear to represent a stable condition."

The most recent report from Parker stated:

> I have recently been provided with an updated survey prepared by Haney's Engineering and Land Services and I have been requested to issue an updated report. I have not yet had sufficient time to review the survey and issue an updated report. Until such time as I am able to complete my review, my opinions remain the same as were contained in my prior report and testimony before the Court.

8

"As stated in my prior testimony, my opinions include the following:

1. The slope at the time of the May 13th survey represented a barely acceptable slope.
2. However, the angle of the slope had been increased by the removal of additional dirt between the May 13th survey and my taking of the soil samples.
3. There was a greater risk of a slope failure by the time of my taking of the soil samples.
4. By the time of the taking of the soil samples, appeared to me to have become an unsafe slope.
5. If Chen were to be allowed to continue to remove soil from the slope, the risk of slope failure would increase.
6. The removal of soil in the slope will potentially affect the remainder of the slope.
7. If Chen continues to remove soil, then the risk for potential failure increases and the size of the potential failure increases.
8. Continued removal of soil from the slope will likely result in partial to complete failure of the exposed slope face.
9. The quantity of earth that would be involved in any such failure would be significant and the top of such a slide would encroach onto Braxton's property. . . ."

Parker concluded that a failure of the slope could be repaired, but that such repair would be expensive. The cost could be mathematically ascertained and would comprise cost of dirt to fill in the slope, a possible retaining wall, and labor.

In light of Parker's testimony, which stated that slope failure could occur at any point in the future, Chen argued that Braxton's causes of action failed because of "lack of injury and mere speculation about injury."

We employ a de novo review of the trial court's grant of a summary judgment, which is based on written pleadings and written evidence. *Valence Operating Co. v. Dorsett*, 164 S.W.3d

656, 661 (Tex. 2005); *Lamar v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see* TEX. R. CIV. P. 166a(c). Summary judgment is proper if Chen established that there was no genuine issue of material fact and that they are entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *French v. Gill*, 252 S.W.3d 748, 751 (Tex. App.—Texarkana 2008, pet. denied); *Powers v. Adams*, 2 S.W.3d 496, 497 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)).

During our analysis of the traditional motion, and in deciding whether there is a disputed material fact issue which precludes summary judgment, proof favorable to Braxton will be taken as true, and every reasonable inference will be indulged in his favor. *Limestone Prods. Distrib.*, *Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Nixon*, 690 S.W.2d at 548–49. A no-evidence summary judgment is essentially a pretrial directed verdict. We, therefore, apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict to determine whether Braxton produced any evidence of probative force to raise a fact issue on the material question presented. *Wal-Mart Stores*, *Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Woodruff v. Wright*, 51 S.W.3d 727 (Tex. App.—Texarkana 2001, pet. denied). A nonmoving plaintiff will defeat a no-evidence summary judgment motion by presenting more than a scintilla of probative evidence on each element of his or her claim. *King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

The trial court's summary judgment specified no particular ground as supporting the summary judgment. When, as is the case here, the trial court does not set out the grounds on which it ruled, we affirm the summary judgment if any ground urged in the motion for summary judgment is meritorious. *W. Invs.*, *Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

"Texas law as to lateral support is correctly stated in *Simon v. Nance*, 45 Tex. Civ. App. 480, 100 S.W. 1038, 1040 (Austin, 1907, no writ)." *Carpentier v. Ellis*, 489 S.W.2d 388, 389 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.). *Simon* states:

> By the weight of authority it is a well settled rule of the common law that an owner of land has an absolute right to the lateral support of adjoining land. In other words, he has the right to have his land remain as it was in a state of nature, and neither the adjoining landowner, nor any one else, can rightfully remove from the boundaries of the land the supports which hold it in its natural position. Therefore, if the adjoining proprietor constructs a ditch or other excavation in such a manner as causes the soil of the complainant to cave in, slough off, or wash away, such adjoining proprietor is liable for damages, and, in a proper case, may be restrained by injunction. The right of lateral support of the soil is absolute, and does not depend upon the question of due care or negligence. However, this absolute right is limited to the soil itself, and does not apply to buildings or other structures which have been placed upon the land. When it is sought to recover damages to improvements which have been placed upon the land, then, as a general rule, the question of negligence becomes an important factor.

*Id.*

Before a party may recover for the loss of lateral support, it must be shown that his or her land has been injured. *Wingfield v. Bryant*, 614 S.W.2d 643, 645 (Tex. Civ. App.—Austin 1981, writ ref'd n.r.e.) (citing *Simon*, 100 S.W. 1038). The aim of a damage award in a loss of lateral support action is to make the injured plaintiff whole. *B.A. Mortgage Co. v. McCullough*, 590

11

S.W.2d 955, 957 (Tex. Civ. App.—Fort Worth 1979, no writ). Where there is no injury, there is no need to make the plaintiff whole, and a cause of action for loss of lateral support will not lie. *See Puretex Lemon Juice, Inc. v. S. Riekes & Sons of Dallas*, *Inc.*, 351 S.W.2d 119, 122 (Tex. Civ. App.—San Antonio, 1961, writ ref'd n.r.e.) ("In another analogy, one man lawfully dug a ditch on his land and some time later this resulted in the loss of lateral support to his neighbor's land. The neighbor's action for damages accrued not at the time the ditch was dug, but when he later sustained injury. *Simon v. Nance*, 45 Tex. Civ. App. 480, 100 S.W. 1038.").

The evidence before the trial court established that no loss of lateral support on Braxton's property had occurred. At best, Parker's testimony established that injury to Braxton's property *could* occur any time in the future. This does not constitute evidence of an injury in fact as required to support a cause of action for loss of lateral support.

Braxton also argues that, because he testified he was familiar with real property sales within one mile of his property, he satisfied the requirement of damage by providing an affidavit that "the threat of the loss of collateral support on the boundary line with the Defendant's land has substantially damaged the market value of my property." Yet, the *threat* of the loss of lateral support is not sufficient injury to support a claim for loss of lateral support.

Finally, Braxton argues that he "ha[d] presented evidence as part of his responses showing that the slope created by [Chen's] removal of soil had begun to erode and collapse." Because the alleged erosion of soil was on Chen's property, this did not constitute evidence that Chen's

12

excavation "cause[d] the soil of the complainant to cave in, slough off, or wash away," as required by *Simon*. 100 S.W. at 1039.[3]

The summary judgment proof contains no evidence demonstrating injury to Braxton's land as required under a claim for loss of lateral support. In fact, the evidence established the contrary; no loss of lateral support had yet occurred. Therefore, even reviewing the evidence in a light most favorable to Braxton, we find that the trial court's summary judgment on this claim was proper.

*(3)     The Cause of Action for Negligence Fails as a Matter of Law*

The elements of a negligence cause of action are a legal duty, a breach of that duty, and damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto*, *Tex.*, *Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (citing *D. Houston*, *Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)).[4] Chen's motion for summary judgment and reply to Braxton's response alleged the

---

[3]Braxton also argues that expert testimony regarding costs to install a retaining wall on his property "in substitution for the lateral support that had previously been provided by the dirt removed and being removed by defendant" satisfied the requirement of damage. However, evidence of cost to repair nonexistent damage does not satisfy the requirement of damage.

[4]Braxton's pleading with respect to negligence states: "7.01. Plaintiff refers to and incorporates the above factual allegations as if set forth in their entirety herein. 7.02. Plaintiff would show that Defendant through Defendant's actions has breached a duty owed to Plaintiff and have breached various statutorily imposed duties, and that these breaches of duty have proximately caused Plaintiff damages." Similar pleadings have been construed as failing to state a cause of action upon negligence. *Carpentier* stated:

> We have carefully examined the pleadings and find that plaintiffs' only allegation in this respect is that the damage was a direct and proximate result of defendants' failure to maintain a proper footing for their retaining wall. We do not regard that pleading as complaining of negligence. The word "negligence" does not have to be used to constitute such a pleading, but the essence must be the failure to use that degree of care that an ordinary prudent person would use under the same or similar circumstances. We construe this pleading to be one as under the absolute liability rule and will proceed to examine this case under that theory of law.

13

negligence cause of action failed because no duty of lateral support was owed and no proof of damages was offered.

"No right of lateral support for land exists where the natural condition thereof has been altered through man's activities so as to create a need for lateral support where none existed in a state of nature, as where an owner raises the level of his land above his neighbor's adjoining land by filling." *Carpentier*, 489 S.W.2d at 390. Braxton's petition states:

> At some time in the past, predecessors in interest to [Chen's] property removed soil from [Chen's] property, presumably in order to make it level and usable. After this was done, there was an approximate 20 to 25 foot difference in the surface level of [Braxton's and Chen's] tracts.
>
> . . . . When [Chen's] predecessors in interest removed the soil from [Chen's] property, they retained a slope at the back of the property from [Braxton's] boundary to the lowered property level of [Chen's] property and thereby maintained the lateral support that was necessary for [Braxton's] property.

The petition alleges that the properties are not in their natural state.

Chen also claimed that the negligence action "fail[ed] because of lack of injury and mere speculation about injury," and "[l]ack of evidence of the fact of damage to Braxton's land." In response to this claim, Braxton replied that his affidavit, in which he stated that he was familiar with real property sales within one mile of his property and concluded "the threat of the loss of collateral support on the boundary line with the Defendant's land has substantially damaged the market value of my property," was some evidence of the damage element.

---

*Carpentier*, 489 S.W.2d at 389. This is because, as explained in *Williams v. Thompson*, "[t]o say that loss of lateral support shows negligence . . . would be but to beg the question." 256 S.W.2d 399, 405 (Tex. 1953).

Braxton's assertion in response to Chen's challenge to the damage element of Braxton's negligence claim must fail as a matter of law for several reasons. First, "[t]o constitute proper summary judgment evidence, an affidavit must be made on personal knowledge, set forth facts which would be admissible in evidence, and show the affiant's competence." *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894 (Tex. App.—Texarkana 2009, pet. denied) (citing TEX. R. CIV. P. 166a(f)). Conclusory statements based on opinion are insufficient to raise a question of fact to defeat summary judgment. *Id.*; *McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *Old Republic Sur. Co. v. Bonham State Bank*, 172 S.W.3d 210, 217 (Tex. App.—Texarkana 2005, no pet.); *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 837 (Tex. App.—Dallas 2005, no pet.) (affidavit that is nothing more than sworn statement of allegations in pleading is conclusory and insufficient to create fact issue). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Cammack the Cook*, 296 S.W.3d at 894. Because Braxton's affidavit does not state any facts to support the conclusion of substantial damage to market value, it is conclusory.

Next, to establish the last element of damage, the plaintiff must prove that the damages were proximately caused by the breach. *Hooper v. Smallwood*, 270 S.W.3d 234, 240 (Tex. App.—Texarkana 2008, pet. denied). "To establish proximate cause, a plaintiff must prove two elements, cause-in-fact and foreseeability. Cause-in-fact is established when the act or omission

15

was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Id.* (citation omitted). Viewing not just the affidavit, but the entire record, we conclude Braxton failed to bring forth any evidence that he was damaged by Chen's excavation, or that any damage was proximately caused by a breach of duty.

Third, if the beach of duty alleged by Braxton is loss of lateral support, an indication of loss of market value is not the proper valuation under which damages are assessed. As stated in *Simon*, the right of lateral support is limited to the soil itself and does not apply to buildings or other structures which have been placed upon the land. *Simon*, 100 S.W. at 1040. The land's fair market value, with which Braxton is familiar, includes the value of improvements. "When it is sought to recover damages to improvements which have been placed upon the land, then, as a general rule, the question of negligence becomes an important factor." *Id.* at 1039. But Braxton has provided no allegation or proof that Chen's actions on the boundary have caused any damage to the improvements on Braxton's tract, or that—even if there had been such allegation or proof—any such damage to improvements was foreseeable. Thus, assuming the threat of damage to soil in the form of a market value reduction was recoverable under a theory of negligence, Braxton's affidavit does not "show the affiant's competence" with respect to this matter. *Cammack the Cook*, 296 S.W.3d at 894. Braxton did not claim that he was familiar with the fair market value of his land without improvements or that he could calculate diminution in market value of the land (without improvement) before and after the excavation through his use of

16

knowledge of fair market value of other properties. Further, because the property had already been excavated before Chen's purchase of the property, Braxton would be required to provide evidence of the difference in value before and after Chen's removal of the soil from the cut slope only.

The summary judgment proof contains no evidence demonstrating that Braxton suffered damages proximately caused by Chen's negligence.

*(4) The Cause of Action for Public or Private Nuisance Fails as a Matter of Law*

"A 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Schneider Nat'l Carriers*, *Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004). "A private nuisance is a nontrespassory invasion of another's interest in the private use or enjoyment of land." *Bily v. Omni Equities*, *Inc.*, 731 S.W.2d 606, 611 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *see Lethu, Inc. v. City of Houston*, 23 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). By contrast, a "public" or "common nuisance" is a condition that amounts to an unreasonable interference with a right common to the general public. *See Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. App.—Austin 1998, no pet.).

In general:

Nuisance, whether it be public or private, is thus a field of tort liability, a kind of damage done, rather than any particular type of conduct. As in the case of any other kind of damage, it may be inflicted by conduct which is intended to cause

17

harm, by that which is merely negligent, or by that which involves an unusual hazard or risk . . . .

*City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex. 1997).  Thus, "[d]amages also are an essential element of a cause of action for nuisance."  *Brown v. Ultramar Diamond Shamrock Corp.*, No. 13-02-00535-CV, 2004 WL 1797580 at *8 (Tex. App.—Corpus Christi Aug. 12, 2004, no pet.) (mem. op.) (citing *Golden Harvest Co. v. City of Dallas*, 942 S.W.2d 682, 689 (Tex. App.—Tyler 1997, pet. denied) ("We must next examine applicable Texas law regarding the elements of nuisance necessary to support a claim for damages.")).  A nuisance may arise by causing (1) physical harm to property, such as by the encroachment of a damaging substance or by the property's destruction, (2) physical harm to a person on his or her property from an assault on his or her senses or by other personal injury, and (3) emotional harm to a person from the deprivation of the enjoyment of his or her property through fear, apprehension, or loss of peace of mind.  *Nugent v. Pilgrim's Pride Corp.*, 30 S.W.3d 562, 574–75 (Tex. App.—Texarkana 2000, pet. denied).

In response to Chen's motion for summary judgment, Braxton argued that he presented more than a scintilla of evidence concerning plaintiff's deprivation of enjoyment of property due to fear, apprehension, or loss of peace of mind.  Braxton's brief cites his affidavit and claims the following excerpts satisfied the damage requirement:

> I am aware of the need for lateral support for my property.  It was my belief that if the dirt that was contained in the slope and that provided lateral support to my land was removed, my land was likely to collapse for lack of lateral support.

18

. . . .

. . . . According to my latest visual inspections of Defendant's property, the slope which he has created to date has already started to erode back towards my property.

My investigation led me to understand that Defendant intended to remove dirt all of the dirt [sic] down to the level of the rest of his property, to either sell the dirt or use it to improve other property that Defendant owns, and, once that was completed, to sell the property, and leave the country. . . .

. . . . Defendant's property has been listed and offered for sale through a local realtor.

Defendant has pushed dirt from his property into the drainage system between the properties. Also, since the dirt and silt that accompanies Defendant's excavation is not being contained with proper erosion controls, dirt and silt has stated to filter into that drainage system. If the dirt from Defendant's excavation is allowed to continue to silt and erode into that drainage system, that drainage system will become blocked and the surface water will be unable to drain properly and will back up onto my property where it will create an unsanitary condition.

. . . .

Based upon all of this information, I believed that it was imperative for me to file suit against Defendant in order to protect my property. I believe that if I had waited to file this suit until after the slope between the properties had collapsed and the drainage system had become blocked, I would not have been able to locate the Defendant in order to sue him to recover for the cost to install a retaining wall, replace the soil that I would have lost, and forcing him to bear the cost of clearing the drainage system.

While one might assume that a neighbor's excavation of his own land could cause fear, apprehension, or loss of peace of mind, we find this evidence does not raise a fact issue as to

19

whether Braxton actually experienced fear, apprehension, or loss of peace of mind *and* suffered a deprivation of enjoyment of property.

Because there was no evidence of physical harm to Braxton's property, physical harm to Braxton on his property from an assault on his senses, or emotional harm to a person from the deprivation of the enjoyment of his property through fear, apprehension, or loss of peace of mind, we conclude that Chen established his right to summary judgment on Braxton's claims of private and public[5] nuisance. The trial court's summary judgment was proper as to this cause of action.

*(5)    No Evidence Raises a Fact Issue on any Imminent Harm or on any Probable Right to Recovery on any Support-Related Cause of Action*

One might have concern that, even if none of the above causes of action upon which Braxton's requested injunctive relief is based have ripened or are supported by any evidence of damages, summary judgment may not be proper as to a possible right to injunctive relief for threatened harm in this situation. But we conclude that no evidence raises a fact issue such as would allow a request for injunctive relief to survive the summary judgment granted by the trial court.

Injunctive relief is ordinarily available if a wrongful act gives rise to imminent and irreparable harm for which there is no adequate remedy at law. *Letkeman v. Reyes*, 299 S.W.3d 482, 486 (Tex. App.—Amarillo 2009, no pet.) (restrictive covenants); *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet.

---

[5]No evidence was presented demonstrating that the nature of the nuisance was a public nuisance.

denied). To obtain injunctive relief, one must generally establish the existence of imminent harm.[6] *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 554 (Tex. 1998); *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983).

The summary judgment proof, viewed in favor of the nonmovant, did not establish any fact issue regarding imminent harm. *See Democracy Coalition v. City of Austin*, 141 S.W.3d 282, 295–96 (Tex. App.—Austin 2004, no pet.). In fact, it established that the prospect for harm was not imminent. "[A]n injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural." *Markel v. World Flight, Inc.*, 938 S.W.2d 74, 80 (Tex. App.—San Antonio 1996, no writ). Fear of a possible injury is not sufficient. *Frey*, 647 S.W.2d at 248. The summary judgment evidence did not raise a fact issue on imminent harm or a probable right to recovery on any of the causes of action predicated on the potential lack of support of the slope.

And, as we have noted above, the summary judgment evidence also established that there was no probable right of recovery on any of the alleged causes of action bottomed on the support issue.

---

[6]Ordinarily, there are four elements to establish to get an injunction:

> (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. The purpose of injunctive relief is not to grant relief for past actionable wrongs or to prevent commission of wrongs not imminently threatened.

*Webb v. Glenbrook Owners Ass'n*, 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.) (citations omitted).

For both reasons, the summary judgment is valid even as to the requested injunctive relief.

*(6)    The Cause of Action for Trespass Remains*

But, Braxton also sued for trespass. Trespass to real property occurs when a person enters another's land without consent. *Rankin v. FPL Energy*, *LLC*, 266 S.W.3d 506, 509 n.4 (Tex. App.—Eastland 2008, pet. denied); *Wilen v. Falkenstein*, 191 S.W.3d 791, 797–98 (Tex. App.—Fort Worth 2006, pet. denied). To recover damages, a plaintiff must prove that: (1) the plaintiff owns or has a lawful right to possess real property; (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary;[7] and (3) the defendant's trespass caused injury to the plaintiff. *Rankin*, 266 S.W.3d at 509 n.4; *Wilen*, 191 S.W.3d at 798.

Here, Braxton's summary judgment evidence stated, "During his excavation of his property, Defendant pushed dirt from his property over the boundary line separating our properties and onto my land. This was done without my consent or authorization." Chen argues that the evidence failed to establish that the trespass caused injury to Braxton. Braxton responds by asserting "[i]f defendant has committed a trespass, plaintiff is entitled to nominal damages under trespass even if plaintiff's land suffered no physical damage."

We agree with Braxton on this issue. Although Braxton did not respond with summary judgment proof that Chen did any injury by entering his property, Braxton may still be entitled to, at least, nominal damages for the trespass. *Brown*, 2004 WL 1979580, at *8 (citing *Gen. Mills*

---

[7]Although we may affirm the trial court's summary judgment if any ground urged in the motion for summary judgment is meritorious, because the only ground asserted in Chen's motions for summary judgment was the claim of damages, we will only assess that issue on appeal. *Urena*, 162 S.W.3d at 550.

*Restaurants*, *Inc. v. Tex. Wings*, *Inc.*, 12 S.W.3d 827, 833 (Tex. App.—Dallas 2000, no pet.);

*Henry v. Williams*, 132 S.W.2d 633, 634 (Tex. Civ. App.—Beaumont 1939, no writ) (by alleging

and proving trespass, appellants "were entitled, at least, to nominal damages")).

Viewing the evidence in a light most favorable to Braxton, we conclude Chen did not carry

his burden to prove entitlement to summary judgment on this sole issue. Therefore, we reverse

the trial court's grant of summary judgment on the claim of trespass and remand the matter to the

trial court for further proceedings.[8]

We affirm the trial court's summary judgment on Braxton's cognizable claims of loss of

lateral support, negligence, and public and private nuisance. However, the trial court's summary

judgment with respect to trespass is reversed and remanded for further proceedings consistent with

this opinion.

Josh R. Morriss, III
Chief Justice

Date Submitted:    May 31, 2011
Date Decided:    September 13, 2011

---

[8]As in *Brown*, "[t]his holding only addresses [Chen]'s entitlement to a no-evidence summary judgment on the element of damages in [Braxton]'s trespass . . . claims. We do not preclude by this holding [Braxton]'s presentation of proof at trial of more than nominal damages." 2004 WL 1979580, at *8 n.6.

23