

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-09-00020-CV
_____


CAMMACK THE COOK, L.L.C., JASON CAMMACK,
LAUREN CAMMACK, AND MILTON CAMMACK, Appellants

V.

MARTA BEYEN EASTBURN, Appellee


On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2007-2609-CCL2


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Cammack the Cook, L.L.C., Jason Cammack, Lauren Cammack, and Milton Cammack (collectively referred to as the Cammacks) appeal from a trial court's summary judgment granted in favor of Marta Beyen Eastburn. The Cammacks contend that the trial court misconstrued the parties' lease agreement in granting Eastburn's motion for summary judgment and in denying the Cammacks' partial motion for summary judgment. We affirm in part and reverse and remand in part for adjudication of the Cammacks' remaining counterclaims.

## I.    Factual and Procedural Background

Eastburn leased several rooms in her interior decorating store to the Cammacks for use as a restaurant and catering facility. Despite the relatively short term of the lease, the Cammacks extensively remodeled the property in order to convert it into a functioning restaurant.[1] The remodeling took two months, cost between $60,000.00 to $70,000.00, and included changes made to the concrete structure, and plumbing and electrical systems. A "gigantic," 1,500-gallon "grease trap was put in the backyard using a crane." Holes were cut into: the ceiling and roof to attach equipment for exhaust fans, the floor and tile to install several eight-by-eight-inch floor drains and kitchen sinks emptying into the sewer system, and the walls to make space for gas and water pipes. Can lights were discarded and replaced with fluorescent lights, interior walls were removed and

---

[1]The lease was entered on June 6, 2005, and expired by its own terms on June 30, 2007.

replaced with new drywall covered with FRP,[2] and stainless steel was mounted or glued on the wall behind the stove in order to shield it from heat.

The Cammacks were able to make timely rental payments for the first four months after the renovations were complete. However, late rental payments began in January 2006 and continued until August 2006. Exasperated with these late payments, Eastburn increased the Cammacks' initial security deposit of $3,115.00 to $6,230.00. The additional deposit failed to deter the Cammacks from making further late rental payments in September, October, and November 2006.

Pursuant to the lease, Eastburn immediately accelerated the due date of all rents. A written notification of default, notice of acceleration, and demand for payment was sent to the Cammacks on October 12, 2006. They did not comply with the notice, the lease was terminated, and Eastburn claimed the Cammacks did not vacate the premises in a timely fashion. She filed a petition in county court for breach of lease of the holdover provision, failure to make timely rental payments, and failure to remove improvements and return the premises to its previous condition. Eastburn further alleged the Cammacks left the property in a "filthy, deplorable condition," and, in violation of lease terms, failed to remove alterations, decorations, and additions in order to return the premises to the condition in which it previously existed. Included in the laundry list of complaints were: vents on the roof which were not removed, holes in the roof, missing or damaged molding, damaged tile and flooring, a damaged window, a grease trap in the backyard which had to be removed and required

---

[2]Fiberglass-reinforced plastic.

the ground to be restored, plumbing and gas fixtures which should have been capped and covered, abandoned items, and general failure to clean the premises.

The Cammacks' answer denied holdover tenancy, arguing that the lease expired by its own terms on July 30, 2007, that all kitchen renovations were completed with Eastburn's consent, that they had no duty to restore the premises, and that some of the repairs requested were not authorized by the lease. They also counterclaimed for return of the security deposit and alleged under Chapter 92 of the Texas Property Code, which only applies to residential leases, that Eastburn was retaliating against them for failure to repair air conditioning, despite the Cammacks' repeated demands, and that they were entitled to attorney's fees. TEX. PROP. CODE ANN. §§ 92.331–.333 (Vernon 2007).

The Cammacks next filed a motion for partial summary judgment arguing Eastburn had no evidence to demonstrate they were holdover tenants. Also, since most of the work completed included permanent changes to the structure, and "[l]ogic and reality dictates that these items cannot be removed without damage to either the property, the building or the premises," the Cammacks argued that the lease provisions did not require them to restore the premises as Eastburn demanded. Eastburn also filed a motion for summary judgment on her own claims, taking the obverse position. She provided bid proposals demonstrating that it would cost $19,155.00 to restore the premises and $16,914.06 to remove the grease trap and fill the hole in the ground. She attached the deposition of Jason Cammack, who testified no work was done to refurbish or restore the facility. He admitted

4

that the lease required the Cammacks to take FRP off the walls and clean the space and that neither task was completed. Jason also admitted that he "had an obligation to remove all of my fixtures." Next, he described the condition in which the Cammacks left the property. Jason clarified cardboard covered a large hole in the ceiling leading to the attic because the vent was removed, that gas and water pipes were not capped and were visible in the wall, that an electrical conduit was coming out of the floor, and that the stainless steel wall shield was not removed. Last, Jason testified the 1,500-gallon grease trap still contained collections from the kitchen drains.

On December 5, 2008, the Cammacks filed amended counterclaims under Chapter 93 of the Texas Property Code, which applies to commercial leases. They alleged Eastburn wrongfully withheld the security deposit, wrongfully excluded them from the premises, and also alleged a cause of action called "failure of consideration," seeking credit for the weeks of rent in which Eastburn allegedly failed to repair the air conditioning. On December 19, they filed a "Response to Eastburn's [Partial] Motion for Summary Judgment Motion to Renew the Cammacks' Motion for Partial Summary Judgment." While the new counterclaims were briefly mentioned, no summary judgment was sought on the counterclaims.[3]

---

[3]"A motion for summary judgment shall state the specific grounds therefor. Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for the hearing." TEX. R. CIV. P. 166a(c). We do not construe the Cammacks' brief references to its counterclaims in a motion filed less than twenty-one days before the summary judgment hearing as a proper motion for summary judgment on the counterclaims. Also, it appears to us that the Cammacks mistakenly argued, through references such as "[t]here is at least a fact issue whether Eastburn is entitled to keep all of the deposit," that summary judgment on Eastburn's claims should be precluded because fact issues

The trial court considered the motions for summary judgment on December 30, 2008, and rendered final judgment awarding Eastburn $36,069.06. Consistent with the affidavit of attorney's fees and costs, the trial court awarded $19,945.00 in fees and $1,067.10 in costs. On appeal, the Cammacks essentially argue, in a brief which challenges the reader, that the trial court erred because the unambiguous lease agreement did not require them to remove improvements made to the property and restore the premises and that Eastburn did not sufficiently prove damages and attorney's fees.

The Cammacks also label the following as points of error: (1) "Appellants present an action against appellee pursuant to Texas Property Code § 93.011"; (2) "Appellants present an action against appellee pursuant to Texas Property Code § 93.002"; (3) "Appellants present a breach of contract action against appellee and a defense of failure of consideration from appellee"; (4) "As a matter of law, appellee is barred from pursuing any holdover claim against appellants. And the final summary judgment denies appellee's holdover and cleaning claims, to which she fails to object"; and (5) "Appellants' written objections, to appellee's motion for summary judgment and to her response to appellants' motion for partial summary judgment, address matters that are not relevant, that do not authorize summary judgment for appellee and which are not a defense to summary judgment against her." At a minimum, "[a] complaint on appeal must address specific errors." *Velasquez v. Waste Connections, Inc.*, 169 S.W.3d 432, 439 (Tex. App.—El Paso 2005, no pet.); *Hollifield v. Hollifield*,

---

existed regarding the Cammacks' amended counterclaims.

6

925 S.W.2d 153, 155 (Tex. App.—Austin 1996, no pet.). Because these statements, as well as the corresponding portion of argument, fail to address specific errors made by the trial court, we overrule these "points of error."

## II.     Finality of the Summary Judgment

Typically, "[a]n order that adjudicates only the plaintiff's claims against the defendant does not adjudicate a counterclaim, cross-claim, or third party claim." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001).[4] Thus, before we address the merits of this appeal, we must determine whether the trial court's summary judgment was final such that it "actually dispose[d] of every pending claim and party or . . . clearly and unequivocally state[d] that it finally dispose[d] of all claims and all parties." *Id.* "[T]he language of an order or judgment *can* make it final, even though it should have been interlocutory, if that language expressly disposes of all claims and all parties." *Id.* at 200. "[I]ntent to finally dispose of the case must be unequivocally expressed in the words of the order itself." *Id.* If that intent is clear from the order, then the order is final and appealable, even though the record does not provide an adequate basis for rendition of judgment. *Id.*

---

[4]Disposition of a particular issue may be inferred from other provisions of a judgment, provided that the inference follows as a necessary implication. *Matelski v. Matelski*, 840 S.W.2d 124, 126 (Tex. App.—Fort Worth 1992, no writ) (citing *Davis v. McCray Refrigerator Sales Corp.*, 136 Tex. 296, 150 S.W.2d 377 (1941)). While we believe the trial court's grant of Eastburn's breach of lease claim necessarily implied a ruling that Eastburn did not wrongfully withhold the security deposit under the lease, we do not believe the same is true of the wrongful exclusion, and alleged "failure of consideration," wherein the Cammacks sought credit for the weeks of rent in which Eastburn allegedly failed to repair the air conditioning.

*Lehmann* explained that a "statement like, 'This judgment finally disposes of all parties and all claims and is appealable,' would leave no doubt about the court's intention." *Id.* at 206. The summary judgment mirrors the *Lehmann* language, stating "[a]ll relief requested by any party in this case that is not expressly granted by this judgment is denied. This judgment finally disposes of all parties and claims in this action, is a final judgment, and is therefore appealable." In such a case, where the language of the order suggests the court intended the summary judgment to be final, but adjudicated counterclaims which were not brought by summary judgment, the judgment is "final-erroneous, but final." *Id.* at 200.

A judgment that grants more relief than requested is "subject to reversal, but it is not, for that reason alone, interlocutory." *Id.* "In those circumstances, the order must be appealed and reversed." *Id.* at 206. If we determine Eastburn was not entitled to summary judgment on her claims, the entire judgment of the trial court will be reversed. *Page v. Geller*, 941 S.W.2d 101, 102 (Tex. 1997). However, if we determine that "the summary judgment in favor of the plaintiff on its claims was proper, [we must] affirm the judgment of the trial court in part, reverse in part since only a partial summary judgment should have been rendered, and remand the case" for further proceedings in the trial court. *Bandera Elec. Coop. v. Gilchrist*, 946 S.W.2d 336, 336 (Tex. 1997); *Page*, 941 S.W.2d at 102; *Jones v. Ill. Employers Ins. of Wausau*, 136 S.W.3d 728, 743–44 (Tex. App.—Texarkana 2004, no pet.); *Pinnacle Data Servs. v. Gillen*, 104 S.W.3d 188, 199 (Tex. App.—Texarkana 2003,

8

no pet.); *Klevin v. Tex. Dep't of Criminal Justice--I.D.*, 69 S.W.3d 341, 344 (Tex. App.—Texarkana 2002, no pet.).

## III.    Standard of Review

A trial court's summary judgment is reviewed de novo. *Laidlaw v. Waste Sys. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.). Summary judgment is proper when a movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *French v. Gill*, 252 S.W.3d 748, 751 (Tex. App.—Texarkana 2008, pet. denied); *Powers v. Adams*, 2 S.W.3d 496, 497 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)). In deciding whether there is a disputed material fact issue which precludes summary judgment, proof favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. We indulge every reasonable inference in favor of the nonmovant. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002).

## IV.    Summary Judgment on Eastburn's Breach of Contract Claim Was Proper

### A.    The Unambiguous Lease Provisions

Both parties believe the lease's unambiguous language supports their position. We must first answer the question of whether this lease contract is ambiguous. This is a question of law which we review de novo. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). We

9

cannot ignore the clear language of an unambiguous contract. *Consol. Petroleum Partners, I, LLC v. Tindle*, 168 S.W.3d 894, 899 (Tex. App.—Tyler 2005, no pet.). If the lease provision above can be given a certain or definite meaning or interpretation, it is not ambiguous, and we must simply apply the language in the lease. *Lopez*, 22 S.W.3d at 861. However, where there are two reasonable interpretations of the same language in a document, ambiguity arises. *Id.*

Construction of the lease provisions was key in resolving the summary judgment. Section 5.2 of the lease stated:

> Upon receipt of Landlord's prior written approval, Tenant may from time to time, at its own expense, alter, renovate or improve the interior of the Premises . . . so as not to weaken or impair the strength or lessen the value of the Building . . . .
>
> . . . .
>
> At the expiration or other termination of this Lease, and upon obtaining the prior written consent of Landlord, Tenant shall remove such alterations, decorations, additions and improvements and restore the Premises as provided in Section 5.5, and if Tenant fails to do so and moves from the Premises, all such alterations, decorations, additions and improvements shall become the property of Landlord and Landlord may, at Tenant's expense, remove all such alterations, decorations, additions and improvements.

Section 5.5 entitled "Trade Fixtures" provided:

> Tenant shall have the right, at the termination of this Lease, to remove any and all trade fixtures, equipment and other items of personal property not constituting a part of the freehold which it may have stored or installed in the Premises, including, but not limited to, counters, shelving, showcases, chairs and movable machinery purchased or provided by Tenant and which are susceptible of being moved without damage to the Property . . . ; and provided further that Tenant, at its own cost and expense, shall repair any damage to the Premises caused thereby. . . . Further, upon termination of this Lease, or within five (5) days thereafter, Tenant shall replace the

10

wall surfaces in the kitchen are [sic] of the Premises with taped and floated sheet rock. The right granted Tenant in this Section shall not include the right to remove any plumbing or electrical fixtures or equipment, heating or air conditioning equipment, floor coverings (including wall-to-wall carpeting) glued or fastened to the floors or any paneling, tile or other materials fastened or attached to walls or ceilings, all of which shall be deemed to constitute a part of the freehold, and, as a matter of course, shall not include the right to remove any fixtures or machinery that were furnished or paid for by Landlord. The Premises and the immediate areas in front, behind and adjacent to it shall be left in a broom-clean condition, and in the condition in which they existed as of the Lease Commencement Date, normal wear and tear excepted. . . . If Tenant shall fail to remove its trade fixtures or other property at the termination of this Lease or within five (5) days thereafter, such fixtures and other property not removed by Tenant shall be deemed abandoned by Tenant, and, at the option of Landlord, shall become the property of Landlord, and Landlord may, at Tenant's expense, remove such trade fixtures and other property and store or dispose of the same, at Tenant's sole cost and expense.

Section 10.5, entitled "Surrender of Premises and Holding Over," stated:

> At the expiration of the tenancy, Tenant shall surrender the Premises in good condition, reasonable wear and tear excepted . . . Tenant shall remove all its trade fixtures and any alterations or improvements, subject to the provisions of Section 5.5, before surrendering the Premises, and shall repair, at its own expense, any damage to the Premises caused thereby.

When read as a whole, we believe the language in the contract is unambiguous for the reasons discussed below. The Cammacks suggest that they were not responsible for removing the items complained of because Section 5.5 of the lease, entitled "Trade Fixtures," does not give them the right to remove: trade fixtures which they may have installed, plumbing, electrical heating or air conditioning equipment, floor coverings, tiles, or other materials *constituting a part of the freehold.* "Trade Fixtures" have been defined many times by the courts to include:

11

such articles as may be annexed to the realty by the tenant to enable him properly or efficiently to carry on the trade, profession, or enterprise contemplated by the tenancy contract or in which he is engaged while occupying the premises, *and which can be removed without material or permanent injury to the freehold*.

*Boyett v. Boegner*, 746 S.W.2d 25, 27 (Tex. App.—Houston [1st Dist.] 1988, no pet.); *see Ashford.Com, Inc. v. Crescent Real Estate Funding III, L.P.*, No. 14-04-00605-CV, 2005 WL 2787014, at *9 (Tex. App.—Houston [14th Dist.] Oct. 27, 2005, no pet.) (mem. op.) (citing *Connelly v. Art & Gary, Inc.*, 630 S.W.2d 514, 515 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.)). In other words, trade fixtures are those that are only removable without permanent or material injury to the premises. *Ashford.Com*, 2005 WL 2787014, at *9; *Connelly*, 630 S.W.2d at 515. We must reject the Cammacks' argument because the items Eastburn required to be removed are improvements or alterations, as admitted by Jason Cammack in his affidavit, and, by definition, are not trade fixtures such that they could be covered by Section 5.5.

We harmonize and give effect to all the lease provisions in relation to the whole instrument so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Here, Sections 5.2 and 10.5 set forth the general requirement that the Cammacks must surrender the premises in good condition, remove all trade fixtures and alterations and improvements, restore the premises, and repair any damage to the property caused due to removal at their own expense. Even Section 5.5 reiterates the general requirement that the Cammacks are to leave the property in "broom-clean condition, and in the condition in which they existed as of the Lease Commencement Date."

12

**B.      The Cammacks' Breach**

When reviewing the laundry list of complaints in Eastburn's demand notice, it is clear that several of Eastburn's complaints involved failure to clean the premises, a duty that Jason realized he had, but, by his admission, failed to perform. Although the Cammacks removed their trade fixtures, according to Eastburn's affidavit, they did nothing to remove their improvements and restore the premises. Specifically, Jason admitted to not removing the 1,500-gallon grease trap, stainless steel on the wall behind the stove, vents on the roof of the kitchen area, and the FRP from the walls. He also admitted to throwing away Eastburn's can lights and replacing them with fluorescent lighting. Eastburn's uncontroverted affidavit stated the walls had not been repaired with taped and floated drywall as required by Section 5.5. Eastburn's affidavit also mentioned the Cammacks failed to make repairs to restore the premises to its condition prior to the lease, including the following admitted by Jason:  failure to repair holes in the roof, ceiling, floor and tile, replace Eastburn's lights which were thrown away, and cap and cover various gas and plumbing fixtures and an electrical conduit. Eastburn's uncontroverted affidavit also complains of the Cammacks' failure to repair damaged or missing molding, a damaged window, and restore the ground where the grease trap was placed after its removal. Photographs submitted in support of the summary judgment motions confirm the condition in which the property was left.

13

Further, Eastburn's affidavit also established that the Cammacks continually failed to pay rent on time, a fact that was never contested by the Cammacks. Also, Section 10.5 of the lease, entitled "Surrender of Premises and Holding Over," provided:

> Tenant shall remove all its trade fixtures and any alterations or improvements, subject to the provisions of Section 5.5, before surrendering the Premises, and shall repair, at its own expense, any damage to the Premises caused thereby. Tenant's obligations to observe or perform this covenant shall survive the expiration or other termination of this lease. If Tenant remains in possession of the Premises after the expiration of the tenancy created hereunder, whether or not with the consent or acquiescence of the Landlord, and without the execution of a new lease, Tenant, at the option of landlord, shall be deemed to be occupying the Premises as a tenant at will on a month-to-month tenancy.

Because the Cammacks failed to remove their improvements and restore the premises, they were subject to the holdover provision under the lease. The affidavit of Jason states the lease terminated on June 30, 2007, and that Eastburn changed the locks on July 1, 2007, and only allowed entry onto the premises during her business hours, as stated in the lease. He complains that the Cammacks should not be held liable for holdover damages because Section 5.5 of the lease allowed a five-day period to remove trade fixtures. However, this five-day period was allowed only if the Cammacks were not in default, and did not guarantee twenty-four-hour access. Thus, the Cammacks failed to present a genuine issue of material fact to counter Eastburn's holdover claim.

In sum, the summary judgment evidence left no issue of material fact regarding the Cammacks' breach of lease.

14

## C.     Damages and Attorney's Fees

On appeal, the Cammacks do not challenge the amount of damages, but simply claim Eastburn was not entitled to recover them because she was not entitled to summary judgment. We overrule this point of error.[5]

The lease agreement provided attorney's fees to the prevailing party for any litigation arising out of enforcement of the lease. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2008). The Cammacks complain that Eastburn's attorney's fees are not reasonable or necessary, especially since counsel did not furnish a time record. Production of a time record is not essential when requesting attorney's fees. While reasonableness of an attorney's fee award often presents a question of fact, an "affidavit filed by the movant's attorney that sets forth his qualifications, his opinion regarding reasonable attorney's fees, and the basis for his opinion will be sufficient to support summary judgment, if uncontroverted." *In re Estate of Tyner*, No 12-08-00232-CV, 2009 WL 1609963, at *4 (Tex. App.—Tyler June 10, 2009, no pet.) (citing *Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 373 (Tex. App.—San Antonio 1999, pet. denied)); *Haden v. Sacks*, No 01-01-00200-CV, 2009 WL 1270372, at *5 (Tex. App.—Houston [1st Dist.] May 7, 2009, no pet. h.). Counsel submitted an affidavit of attorney's fees totaling $19,945.00. It detailed the involvement with the case, stated counsel's associate worked 43.8 hours at the rate of $125.00 per hour, and that

---

[5]The trial court awarded $36,069.06 in damages. This was supported by the uncontroverted affidavit of Bala Duszik, owner of a construction company, who provided itemized bids and stated the cost to restore the premises would be $19,155.00, with an additional $16,914.06 to remove the grease trap and restore the ground.

he worked 84 hours, 9.2 hours of which were billed at $150.00 per hour and 74.8 hours of which were billed at $175.00 per hour. Eastburn's affidavit established that she was required to pay these fees.

Based on a false assumption that the final order denied the "holdover and cleaning claims," the Cammacks argue Eastburn should not receive attorney's fees because their counsel did not segregate the "cleaning and holdover claims" from the restoration claims.[6] When a plaintiff seeks to recover attorney's fees where at least one claim supports an award of attorney's fees and at least one does not, segregation is required unless the claims arise out of the same transaction and are so interrelated that the award or denial depends on the same facts. *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 709 (Tex. App.—Fort Worth 2006, pet. denied); *Lesikar v. Rappeport*, 33 S.W.3d 282, 317 (Tex. App.—Texarkana 2002, pet. denied); *Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied). All of Eastburn's claims were for breach of the lease, any of which would support an award for attorney's fees. Further, the claims all arose from the same transaction and involved essentially the same facts. Segregation of the breach of lease claims was not needed in this case.

Thus, unless the necessity for or the reasonableness of attorney's fees was controverted by raising a fact question in a manner which would successfully preclude the summary judgment award of attorney's fees, Eastburn was entitled to have them awarded to her. "[A] summary judgment

---

[6]The final order simply denied the Cammacks' motion for summary judgment and granted Eastburn's motion. It made no distinction relating to the holdover claims.

16

award of attorney's fees is improper where the nonmovant produces a controverting affidavit regarding fees." *AU Pharm., Inc. v. Boston*, 986 S.W.2d 331, 338 (Tex. App.—Texarkana 1999, no pet.). To constitute proper summary judgment evidence, an affidavit must be made on personal knowledge, set forth facts which would be admissible in evidence, and show the affiant's competence. *Id.*; *see* TEX. R. CIV. P. 166a(f). "Conclusory statements or statements based purely on opinion are not competent summary judgment evidence." *Hawthorne v. Star Enter., Inc.*, 45 S.W.3d 757, 759 (Tex. App.—Texarkana 2001, pet. denied); *see Haden*, 2009 WL 1270372, at *5. Although an expert witness's opinion testimony in a summary judgment affidavit can defeat a summary judgment claim, it is the basis of the expert's claim, and not the expert's bare opinions alone, that can settle a question as a matter of law. *See Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999).

Here, the affidavit submitted by the Cammacks' attorney attempting to controvert the merit of the movant's summary judgment affidavit supporting an award of attorney's fees which had been incurred stated, "[t]he attorney fees plaintiff's attorney claims are not necessary or reasonable, and they are an excessive and bad faith demand" without providing a rationale upon which the statement was based. The affidavit contains no recitation that the hourly rates charged by Eastburn's attorneys were unreasonably high, that the time alleged to have been expended was excessive to accomplish the work which was provided, that work performed by her attorneys was unnecessary to prosecute the case, or that the work as alleged was not performed. In sum, there is no evidence underlying the

17

conclusion that Eastburn's requested attorney's fees at the trial level are unreasonable or unnecessary. Therefore, since the affidavit does not provide any basis for the statement made, the statement is simply conclusory in nature. The remainder of the affidavit claims that the fees are unreasonable because the lease did not support an award for Eastburn, the claims were not segregated, and Eastburn's summary judgment motion was groundless. These are legal arguments, not facts, which are resolved in Eastburn's favor. The controverting affidavit makes no mention of Eastburn's anticipated attorney's fees on appeal, and those fees remain uncontested.

## V.       Conclusion

We affirm the summary judgment of the trial court on Eastburn's claims, and by implication, against the Cammacks' counterclaim regarding the security deposit. However, because the trial court did not adjudicate the Cammacks' remaining counterclaims, we reverse and remand in part for further proceedings consistent with this opinion.


                                            Bailey C. Moseley
                                            Justice

Date Submitted:        July 13, 2009
Date Decided:          September 25, 2009


18