**SOUTH TEXAS HEALTH SYSTEM, Plaintiff,**

v.

**CARE IMPROVEMENT PLUS OF TEXAS INSURANCE COMPANY, Defendant.**

**CIVIL ACTION NO. 7:14–CV–912**

United States District Court, S.D. Texas, McAllen Division.

Signed February 9, 2016

Jennifer Rudenick Ecklund, Andrew Christian Cookingham, William Lowell Banowsky, Thompson and Knight LLP, Dallas, TX, Mason Craig Meyer, Sullins Johnston et al, Houston, TX, Austin P. Tighe, Jr., Feazell & Tighe LLP, Austin, TX, for Plaintiff.

Andrew G. Jubinsky, Raymond Earl Walker, Figari Davenport LLP, Dallas, TX, for Defendant.

### ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

Randy Crane, United States District Judge

Now before the Court is Defendant Care Improvement Plus of Texas Insurance Company's Second Motion for Summary Judgment. (Dkt. No 49). Having considered the Motion and the responsive briefing, (Dkt.Nos. 51, 53), in light of the relevant law, and for the reasons articulated below, the Court is of the opinion that Defendant's Motion should be GRANTED.

## I. Factual and Procedural Background

Plaintiff South Texas Health System ("STHS") owns and operates a number of hospitals in Hidalgo County, Texas, and is a "provider" as that term is defined by Medicare regulations. (Dkt. No. 35); see 42 C.F.R. § 422.2. Defendant Care Improvement Plus ("Care Improvement") is a Medicare Advantage ("MA") organization, a private company that provides healthcare coverage to Medicare beneficiaries. (Dkt. No. 2–1). It is registered as a Health Maintenance Organization ("HMO") under Chapter 843 of the Texas Insurance Code, but does not operate any plans outside of the MA program. Id.; (Dkt. No. 49, Exh. A, Stip.1). STHS and Care Improvement entered into a Hospital Care Agreement ("the Agreement") whereby STHS agreed to treat individuals enrolled in Care Improvement's MA plans. (Dkt. No. 2–2). Generally, under the Agreement, STHS provides medical care to enrollees and then makes claims to Care Improvement in order to receive payment. Id. The Agreement includes provisions for the timing of payments and, importantly, a provision requiring Care Improvement to

pay "any interest owing or accruing on a claim under any applicable State or federal law or contract" if they fail to comply with the timing provisions. *Id.*, § 4.2.6. STHS brought this suit alleging that it made some 453 claims pursuant to the Agreement that were not timely paid by Care Improvement. (Dkt. No. 13–2).

In its First Amended Complaint, STHS brought claims for violation of the Texas Insurance Code, specifically Sections 843.342 and 1301.137, portions of the Texas Prompt Pay Act ("prompt pay claims"), and for Breach of Contract. (Dkt. No. 35).[1] Care Improvement subsequently filed a partial Motion for Summary Judgment, seeking summary judgment on the grounds that STHS's prompt pay claims were preempted by federal law. (Dkt. No. 16). The Court granted this motion, finding regulations under Part C of Medicare that regulate the prompt payment of claims under MA plans expressly preempted STHS's claims under the Texas prompt pay statutes. (Dkt.46). Thus, the only remaining claim before the Court is STHS's claim for breach of contract.

Care Improvement brings the present Motion seeking summary judgment that: (1) STHS cannot recover State statutory penalties under Chapter 843 on their breach of contract claim, and (2) for any claim untimely paid under the Agreement, the proper contractual remedy is interest at the applicable rate set by the U.S. Treasury. (Dkt. No 49.)

## II. Defendant's Motion for Summary Judgment

### A. Standard of Review

■ A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); FED. R. CIV. P. 56(a), (c). Where the movant bears the burden of proof, it must establish " 'beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor.' " *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in original). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; FED. R. CIV. P. 56(c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th

---

1. STHS originally asserted only one cause of action, a claim for prompt-payment penalties and interest. *See* (Dkt. No. 3–3). STHS subsequently amended its Complaint to add the breach of contract claim. (Dkt. No. 35). The parties have since stipulated that Chapter 1301 of the Texas Insurance Code does not apply to HMOs such as Care Improvement. (Dkt. No. 49, Exh. A).

Cir.2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.,* 595 F.3d 219, 229 (5th Cir.2010); *see also Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir.2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

## B. Arguments

The language at issue in the Agreement is found in the section dealing with compensation and billing. *See* Dkt. No. 2–2. Under the Agreement, STHS and Care Improvement agreed that STHS would bill for covered services according to a prescribed procedure, and that Care Improvement would pay at a rate between 85% and 103% of rates determined by the Centers for Medicare and Medicaid Services ("CMS") for those services, depending on the type of care provided. *Id.,* at § 4.1, Attachs. A, B. STHS agreed to bill for covered services within 180 days and to submit claims on CMS claim forms. *Id.* at §§ 4.2.1–4.2.2. Section 4.2.3 sets forth a 30–day period in which Care Improvement must pay a valid claim:

> *Subject to the regulations of the State of Texas* and 42 CFR 422.520 et seq., PLAN, where it is the Payor, shall pay a Valid Clean Claim within thirty (30) days of receipt of the claim unless PLAN has a reasonable basis supported by specific information to make a good faith determination that the claim is not a Valid Clean Claim, or the claim was submitted fraudulently.

*Id.,* at § 4.2.3 (emphasis added). Similarly, Section 4.2.5 specifies that, within 30 days of the submission of a claim by STHS, Care Improvement must either pay the claim or deny it and request more information:

> PLAN shall, within thirty (30) days after receipt of a claim, either pay the claim or issue a denial. If claim is not to be paid, PLAN must request electronically or in writing from the Hospital submitting the claim the information and documentation that PLAN reasonable believes will be required to process and pay the claim or to determine if the claim is a Valid Clean Claim or Hospital must be given notice that claim is being denied and the reason for the denial. Once the additional information and documentation that is necessary to process the claim is received by PLAN, PLAN shall pay the claim within thirty (30) days from the receipt of the additional information.

*Id.,* § 4.2.5. Finally, § 4.2.6 provides the repercussions for any failure to pay or deny a claim on time:

> If PLAN fails to comply with § 4.2.5, PLAN *shall pay any interest owing or accruing on a claim under any applicable State or federal law or contract,* without necessity of demand by the Hospital, at the time the claim is paid.

*Id.* § 4.2.6 (emphasis added).

STHS interprets the language of both § 4.2.3 and § 4.2.6 to incorporate the penalties set out in the Texas Prompt Pay Act, codified in the Texas Insurance Code at § 843.342. (Dkt. No. 35, ¶ 16; Dkt. No. 51). That statute sets out escalating penalties for HMOs that fail to pay valid claims on or before the date they are due: half of the difference between the agreed-upon rate and the provider's billed charges—up to $100,000—if the payment is 0–45 days late, the entire difference between the agreed-upon rate and the provider's billed charges—up to $200,000—if payment is 45–90 days late, and the entire difference between the agreed-upon rate and STHS's billed charges plus 18% annual interest if payment is more than 90 days

late. Tex. Ins. Code § 843.342; *See also* Dkt. No. 51, p. 2.

STHS alleges that Care Improvement failed to pay hundreds of properly-submitted claims within the periods delineated in the Agreement. (Dkt. No. 35, ¶ 11; Dkt. No. 16, Exh. 1; Dkt. No. 49, Exh. A).[2] In sum, for the 453 late payments alleged, STHS claims over $11 million in statutory penalties for late payments of claims totaling roughly $22,000. (Dkt. No. 13–2; Dkt. No. 49, Exh. A).

In its Motion for Summary Judgment, Care Improvement asserts that the Agreement does not incorporate Texas statutory penalties as a contractual remedy for late-paid claims. (Dkt. No. 49). It argues that the penalty scheme under Ch. 843 of the Texas Insurance Code ("prompt pay laws") is not "applicable" to MA claims because, as this Court has already ruled, they are preempted by the Medicare statute. *Id.* at pp. 6–7. The laws' inapplicability is further evidenced, it argues, by TDI and CMS guidelines in effect at the time the Agreement was signed. *Id.* at pp. 7–8. Furthermore, it argues that because Ch. 843 deals with "penalties," and § 4.2.6 only requires the payment of "interest," the statutes are not implicated by the Agreement. *Id.* at pp. 8–9. It also argues that STHS's interpretation should not be enforced because it is "unreasonable, inequitable, and oppressive." *Id.* at pp. 9–10. Alternatively, Care Improvement argues that, even if the parties had included a provision setting a penalty calculated under Chapter 843, such a provision would be void because it does not satisfy the requirements of a liquidated damages provision under Texas law. *Id.* at pp. 10–13. In lieu of STHS's proposed interpretation, Care Improvement urges the Court to find that the contractual remedy for any un-

timely paid claims is "interest" at the applicable rate set by the U.S. Treasury Department, pursuant to CMS guidelines. *Id.,* at pp. 12, 14 (citing 42 C.F.R. § 422.520(a)(2)).

## C. Analysis

In their Motion, Care Improvement asks the Court to find that (1) the Agreement does not incorporate the Texas prompt pay laws as a contractual remedy for late-paid claims; and (2) the proper contractual remedy is interest at the applicable rate set by the U.S. Treasury Department. *Id.* The Court will address each of these contentions in turn.

### 1. Texas Prompt Pay Laws

Care Improvement first argues that the prompt pay laws are not "applicable" under § 4.2.6 because they are preempted by the Medicare statute. (Dkt. No. 46, at p. 7). Indeed, the Court recalls its Order on Care Improvement's first Motion for Summary Judgment, in which it held that STHS's claims under the prompt pay laws are expressly preempted by regulations under Part C of Medicare that regulate the timely payment of claims under MA laws. (Dkt. No. 46). In holding so, this Court found that the federal regulation addressing the timing of payment by an MA organization to a participating provider directly addresses prompt payment and therefore qualifies as a "standard" within the meaning of the MA preemption clause. *Id.*; *see also* 42 U.S.C § 1395w–26(b)(3); 42 C.F.R § 422.520(b). However, the federal regulation at issue merely requires that "[c]ontracts and other agreements between MA organizations and providers must contain a prompt payment provision," and that "[t]he MA organization is

2. The Court will assume, for the purposes of this Motion, that the payments were made at the times that STHS—the nonmovant in the

instant Motion—alleges. *See Reeves,* 530 U.S. at 150, 120 S.Ct. 2097; *Dean,* 438 F.3d at 454.

obligated to pay contracted providers under the terms of the contract between the MA organization and the provider." 42 C.F.R. § 422.520(b).

■ The applicable federal law, then, allows parties to negotiate and adhere to their own terms regarding prompt payment. In the Court's view, this includes the freedom to agree to contractual provisions that incorporate otherwise inapplicable state regulations. The fact that state prompt pay laws were preempted by the federal regulatory scheme does not prevent parties from incorporating the penalties laid out in the preempted state regulations into their contractual agreement; it is well-settled that when a party to a contract provision voluntarily undertakes a contractual commitment, such a commitment should not be regarded as a state-law requirement for the purposes of federal preemption. *See, e.g. Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 228, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (finding that the ADA's preemption clause did not shelter airlines from suits "alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings"); *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 526, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (holding that "[a] common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement ... imposed under State law'" under a statutory preemption clause).

■ However, even assuming that the parties could have incorporated Ch. 843's penalties for late payment into the Agreement if they had so chosen, the language of the Agreement does not allow for such an interpretation. When interpreting a written contract, "[t]he court's primary concern is to enforce the parties' intent as contractually expressed, and an unambiguous contract will be enforced as written."

*Interstate Contracting Corp. v. City of Dall.,* 407 F.3d 708, 712 (5th Cir.2005); *see also RSUI Indem. Co. v. The Lynd Co.,* 466 S.W.3d 113, 118 (Tex.2015). "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Anglo–Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.,* 352 S.W.3d 445, 449–50 (Tex.2011) (citing *David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 451 (Tex. 2008) (per curiam). If the terms and conditions of the contract have a definite and certain meaning it is not ambiguous, and the Court must simply apply the language in the contract. *See Luccia v. Ross,* 274 S.W.3d 140, 146 (Tex.App. Houston [1 Dist.] 2008) (citing *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). The Court's interpretation of an unambiguous contract is a question of law and it cannot ignore its clear language. *Cammack the Cook, L.L.C. v. Eastburn,* 296 S.W.3d 884, 891 (Tex.App.–Texarkana 2009) (citation omitted). Ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 861 (Tex.2000). Because here the contract language can be given a definite legal meaning, and it is not reasonably susceptible to more than one meaning, it is unambiguous.

First, the Court notes that § 4.2.6 calls for *"interest owing or accruing on a claim* under any applicable State or federal law or contract" to be paid for any late claims. (Dkt. No. 2–2, § 4.2.6) (emphasis added). By contrast, the Texas prompt pay provisions set forth "penalties," not "interest." Tex. Ins. Code § 843.342. The prompt payment laws lay out varying penalties according to the number of days after the deadline payment is made:

(a) Except as provided by this section, if a clean claim submitted to a health maintenance organization is payable and the health maintenance organization does not determine under this subchapter that the claim is payable and pay the claim on or before the date the health maintenance organization is required to make a determination or adjudication of the claim, the health maintenance organization shall pay the physician or provider making the claim the contracted rate owed on the claim plus *a penalty in the amount of the lesser of:*

> (1) 50 percent of the difference between the billed charges, as submitted on the claim, and the contracted rate; or

> (2) $100,000.

(b) If the claim is paid on or after the 46th day and before the 91st day after the date the health maintenance organization is required to make a determination or adjudication of the claim, the health maintenance organization shall pay *a penalty in the amount of the lesser of:*

> (1) 100 percent of the difference between the billed charges, as submitted on the claim, and the contracted rate; or

> (2) $200,000.

(c) If the claim is paid on or after the 91st day after the date the health maintenance organization is required to make a determination or adjudication of the claim, the health maintenance organization shall *pay a penalty computed under Subsection (b) plus 18 percent annual interest on that amount.* Interest under this subsection accrues beginning on the date the health maintenance organization was required to pay the claim and ending on the date the claim and the penalty are paid in full.

*Id.* (emphasis added).

STHS argues that the word "interest" in the Agreement is given full effect once it begins to accrue; that is, that the penalties amount to "interest" under the Agreement because, after 90 days, they begin to accrue interest at 18% under subsection (c). (Dkt. No. 51, p. 7). However, the Court does not consider subsection (c) to transform the entire schedule of penalties under § 843.342 into "interest" for the purposes of the Agreement. That subsection requires that, for claims that are more than 90 days overdue, the penalty under subsection (b) will begin to accrue interest at 18%. It is the *penalty* that accrues interest under subsection (c), not the claim itself. Sensibly read, the statute lays out a penalty scheme for late payments. Section (c) adds to the scheme by requiring that HMOs paying claims more than 90 days late must also pay interest on the penalty at 18%. The fact that the penalty itself accrues interest does not translate the penalty scheme into "interest owing or accruing on a claim."

 Regardless of the terms used in the Agreement, STHS urges the Court to focus on the Parties' intentions, which they argue included that § 843.342 be applied in the case of late payment. *Id.* (citing *Coker v. Coker,* 650 S.W.2d at 392). However, the Court must look to the intent of the parties *as contractually expressed,* and may not ignore the contract's clear language. *Interstate Contracting Corp.,* 407 F.3d at 712; *Cammack the Cook,* 296 S.W.3d at 891. In doing so, the Court gives words their "plain, common, or generally accepted meaning unless the contract shows that the parties used words in a technical or different sense." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.,* 473 S.W.3d 296, 305 (Tex.2015); *see also Reilly v. Rangers Mgmt., Inc.,* 727

S.W.2d 527, 530 (Tex.1987). The term "interest" has long been defined in Texas as compensation for the use or detention of another's money; anything in addition to such compensation is a penalty. *Parks v. Lubbock,* 92 Tex. 635,51 S.W. 322 (1899) [3]; *Carl J. Battaglia, M.D., P.A. v. Alexander,* 177 S.W.3d 893, 907 (Tex.2005) ("Compensation other than for the lost use of money . . . is not 'interest.' One could call such compensation a windfall (from the claimant's perspective) or a penalty or fine (from the defendant's perspective), but it is not 'interest.' "). It is clear from the language of § 843.342 that the penalties described therein are just that—penalties—and the unambiguous language of § 2.4.6 cannot reasonably be read to incorporate them.

■■■ STHS further argues that the parties expressly incorporated Texas law into the Agreement, pointing to the requirement in § 4.2.3 that, "[s]ubject to the regulations of the State of Texas," Care Improvement must pay any claims within 30 days. (Dkt. No. 51, p. 10). Care Improvement argues, and the Court agrees, that this language can also not be read to incorporate the prompt payment laws. *See* (Dkt. No. 53, pp. 4–8). First, the Section deals specifically with the period within which Care Improvement must pay properly filed claims; it does not address the payment of penalties for overdue claims. (Dkt. No. 2–2). The only section to address late payment is § 2.4.6. *Id.* Further, the Court notes that neither § 4.2.1 nor § 4.2.2, which deal with the timeliness and format of claim submissions, make any reference to Texas or federal law. (Dkt. No. 2–2). In the context of these sections, and reading the Agreement as a whole, the language cited by STHS is best read within the confines of § 4.2.3, that is, incorporating at most those provisions of Texas law that regulate the amount of time following a claim submission in which a payment is due.[4]

The Court notes that its reading of the Agreement coincides with agency guidance in effect at the time the Agreement was signed. Guidance from both the Texas Department of Insurance ("TDI") and the Centers for Medicare and Medicaid Services ("CMS") make clear that the prompt pay laws do not apply to MA plans generally. *See* (Dkt. No. 26, at p.7–8). The TDI published guidance in 2003, applicable at the time the Agreement was signed, that rules under Chapter 843, including the prompt payment provision invoked by STHS, "do not apply to Medicare + Choice plans."[5] 28 Tex. Reg. 8647, 8651; *see also*

3. "Interest, as known to the common law, is defined as 'a compensation usually reckoned by a percentage for the loan, use, or forbearance of money.' This does not embrace the compensation for the detention of money beyond the time at which it was agreed to be paid; that is to say, after the maturity of the debt. Therefore the parties to a contract for the payment of money might lawfully stipulate that, upon the failure of the debtor to pay at maturity, he should pay for its detention a rate in excess of what the law would allow as interest. The sum so agreed to be paid for the detention of the money is treated, not as interest, but as a penalty for failing to pay at maturity." *Parks,* 51 S.W. at 323.

4. For example, the Court notes that § 843.338 of the Texas Insurance Code sets the default deadline for payment of a claim at 30 days if the claim was submitted electronically, and 45 days if it was submitted on paper. Tex. Ins. Code § 843.338.

5. With respect to this language, the Court notes that for the purposes of this Order "Medicare + Choice" is effectively synonymous with "Medicare Advantage." The Balanced Budget Act of 1997 named Medicare's managed care program Medicare + Choice and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 renamed it "Medicare Advantage." Pub.L. No. 105–33, 111 Stat. 251; Pub.L. No. 108–173, 117 Stat.2066; *see also* Dkt. No. 46, at pp. 3–4.

(Dkt. No. 2–2, pp. 2, 20). This is also consistent with 2003 CMS guidance that "the MA plans are only subject to Federal regulation with the exception of State licensure and solvency requirements." 70 FR 4588-01. These agency comments—while not determinative of the issue—provide the regulatory context within which to read the Agreement. Given that the state and federal enforcement agencies' interpretation that the prompt pay laws are not applicable to MA plans, the general language of the agreement cannot be read to incorporate these otherwise inapplicable penalties.[6]

Because the Court finds that the Agreement is unambiguous and does not incorporate the Texas prompt pay laws, it need not address Care Improvement's arguments regarding the enforceability of the prompt pay laws as a contractual remedy under Texas law. *See* (Dkt. No. 49, pp. 9–13).

## 2. Federal Prompt Payment Interest Rates

■ In its First Amended Complaint, STHS prays for "statutory penalties and interest under the Texas Insurance Code §§ 843.342, 1301.137, and the applicable terms of the Agreement." (Dkt. No. 35, p. 6).[7] The Court has found that, under a proper reading of the Agreement, the Texas prompt pay laws are not applicable. Accordingly, it now turns to the proper assessment of damages for the alleged late payments under "the applicable terms of the Agreement." *See id.* In its Motion to

Dismiss, Care Improvement argues that the proper remedy under the Agreement for the alleged late-paid claims is " 'interest' at the applicable rate set by the U.S. Treasury." (Dkt. No. 29, p. 14). The Court agrees.

With respect to the timeframe in which Care Improvement must pay a valid claim, the Agreement specifically references CMS regulations regarding prompt payment by MA organizations. (Dkt. No. 2–2, § 2.4.3 (referencing 42 C.F.R. § 422.520)). The cited CMS regulation requires that MA organizations pay interest on valid claims that are not paid within 30 days in accordance with 42 U.S.C. § 1395h, which, in turn, sets the interest rates to be paid on late MA payments to the same rate used to calculate interest in other federal contracts. 42 C.F.R. § 422.520 (citing "sections 1816(c)(2)(B) and 1842(c)(2)(B) [of the Social Security Act]," codified at 42 U.S.C. § 1395h); *see also* 41 U.S.C § 7109; 31 U.S.C. § 3902 (mandating that the Secretary of the Treasury establish a rate of interest for late agency payments and publish them in the Federal Registry). These interest rates, known as the Prompt Payment Interest Rates, are set by the Treasury Department, and ranged from 1.375% to 3.250% between the years 2010 and 2014. *See, e.g.*, Prompt Payment Interest Rate; Contract Disputes Act, 77 Fed.Reg. 76,624–01 (Dec. 28, 2012) (setting the prompt payment interest rate at 1.375% for the period between January 1, 2013 and June 30, 2013); Prompt Payment Interest Rate; Contract Disputes Act, 74

---

**6.** In response, STHS does not argue that the TDI and CMS guidance is not entitled to deference, but that the TDI comments "predate the enactment of the current prompt payment laws," because all of the cited comments refer to Insurance Code 2.70–3C, which is no longer in effect. The Court notes that the change cited by STHS is the result of a non-substantive revision of Texas statutes, which reorganized the code and moved the relevant provisions to Chapter 843. Tex. Ins. Code Art. 20A.01, Bill Analysis, HB 2811 (March 21, 2001); Tex. Ins. Code § 843.001. The TDI guidance—and its applicability to the relevant provisions—remains unchanged.

**7.** The Parties have since stipulated that Chapter 1301 of the Texas Insurance Code does not apply to HMOs. (Dkt. No. 49, Exh. A); *see supra* n. 1.

Fed.Reg. 69,379–05 (Dec. 31, 2009) (setting the prompt payment interest rate at 3.250% for the period between January 1, 2010, and June 30, 2010).

In addition to the explicit mention of CMS regulations tying the interest rate for late-paid claims to the applicable Federal Prompt Payment Interest Rate, the Court is persuaded that the Prompt Payment Interest Rates were contemplated in § 4.2.6's language requiring the payment of "interest owing or accruing on a claim under any applicable State or federal law or contract." (Dkt. No. 2–2, § 4.2.6). Unlike the Texas prompt pay penalties, the federal Prompt Payment Interest Rates are—in name and in substance—"interest" as the word is used in the Agreement. Furthermore, the CMS regulations and Prompt Payment Interest Rates, in addition to being specifically incorporated at § 4.2.3, are "applicable" federal law within the meaning of § 4.2.6. Accordingly, for any alleged violations of § 4.2.5 of the Agreement, the proper method of calculating "interest" under § 4.2.6 is interest at the applicable Prompt Payment Interest Rate

## V. Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Defendant Care Improvement Plus of Texas Insurance Company's Second Motion for Summary Judgment is **GRANTED.** Plaintiff cannot recover State statutory prompt pay "penalties" under the terms of the contract between the parties.

SO ORDERED this 9th day of February, 2016, at McAllen, Texas.